**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN R. LAMBERT | : | |
| | : | |
| Appellant | : | No. 3563 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 19, 2019
In the Court of Common Pleas of Chester County
Criminal Division at No(s):  CP-15-CR-0000315-2018

BEFORE:   PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    Filed: September 24, 2020

Jonathan R. Lambert appeals from the judgment of sentence imposed on November 19, 2019, in the Chester County Court of Common Pleas. On May 14, 2019, a jury convicted Lambert of criminal use of a communication facility, possessing instruments of crime, criminal conspiracy to commit burglary, criminal conspiracy to commit criminal trespass, criminal conspiracy to commit possessing instruments of crime, and criminal conspiracy to commit theft by unlawful taking.[1] The trial court sentenced Lambert to an aggregate term of four to nine years' incarceration plus two years of probation. On

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa. C.S.A. § 7512(a), 907(a), 903(a)(1-2)/3502(a)(4), 903(a)(1-2)/3503(a)(1)(ii),     903(a)(1-2)/907(a),     and     903(a)(1-2)/3921(a), respectively.

appeal, Lambert raises the following claims: (1) the trial court erred in denying his motion to suppress because the vehicle stop at issue was purportedly illegal; and (2) the court erred in denying his petition for writ of *habeas corpus* by finding that the Commonwealth had met its burden of establishing a *prima facie* case for the offenses held at his trial. After careful consideration, we affirm the judgment of sentence.

The trial court set forth the facts and procedural history as follows:

> The facts of this matter in a nutshell are that the [Lambert] participated in a conspiracy to commit Burglary and other related offenses in Coatesville, Chester County, Pennsylvania over the course of six (6) days from November 18, 2017 through November 3, 2017. [Lambert]'s participation was revealed in two (2) recorded phone calls he received from his brother, Douglas Lambert, who was in prison when he made these and other recorded calls to the members of the conspiracy, surveillance conducted by the Coatesville Police Department upon their receipt of the records of these calls, and [Lambert]'s presence with two (2) of the co-conspirators during a traffic stop at approximately 11:30 p.m. on the night of November 23, 2017, Thanksgiving night, during which stop various tools, including ski masks, wire bolt cutters, night-vision goggles, machetes, and other implements utilized in burglaries were found in the car. [Lambert] was taken into custody. No burglary was ever consummated.

> A Police Criminal Complaint was filed on November 24, 2017 charging [Lambert] with Burglary and related offenses. At the Preliminary Hearing held on January 29, 2018, the Commonwealth amended the Police Criminal Complaint by withdrawing the following offenses: Burglary, 18 Pa.C.S.A. § 3502(a); Criminal Conspiracy to Commit Burglary, 18 Pa.C.S.A. §§903, 3502(a); Criminal Use of Communication Facility, 18 Pa.C.S.A. § 7512(a); and Possessing Instruments of Crime, 18 Pa.C.S.A. § 907(a).

> The Commonwealth then added the following charges: Criminal Conspiracy to Commit Burglary, 18 Pa.C.S.A. §§ 903, 3502(a)(4), graded as an F-2; Criminal Attempt to Commit Burglary, 18 Pa.C.S.A. §§ 901, 3502(a)(4), graded as an F-2; two

(2) counts of Criminal Use of a Communication Facility, 18 Pa.C.S.A. § 7512(a), graded as F-3's; Criminal Conspiracy to Commit Criminal Use of a Communication Facility, 18 Pa.C.S.A. §§ 903, 7512(a), graded as an F-3; Prohibited Offensive Weapons, 18 Pa.C.S.A. § 908(a), graded as an M-1; Criminal Conspiracy to Commit Prohibited Offensive Weapons, 18 Pa.C.S.A. §§ 903, 908(a), graded as an M-1; two (2) counts of Possessing Instruments of Crime, 18 Pa.C.S.A. § 907(a), graded as an M-1; Criminal Conspiracy to Commit Possessing Instruments of Crime, 18 Pa.C.S.A. §§ 903, 907(a), graded as an M-1; Criminal Conspiracy to Commit Criminal Trespass, 18 Pa.C.S.A. §§ 903, 3503(a)(1)(ii), graded as an F-2; Criminal Attempt to Commit Criminal Trespass, 18 Pa.C.S.A. §§ 901 , 3503(a)(1 )(ii), graded as an F-2; Criminal Conspiracy to Commit Theft by Unlawful Taking or Disposition, 18 Pa.C.S.A. §§ 903, 3921(a), graded as an M-3; Criminal Attempt to Commit Theft by Unlawful Taking or Disposition, 18 Pa.C.S.A. §§ 901, 3921 (a), graded as an M-3; Criminal Conspiracy to Commit Receiving Stolen Property, 18 Pa.C.S.A. §§ 903, 3925(a), graded as an M-3; and Criminal Attempt to Commit Receiving Stolen Property, 18 Pa.C.S.A. §§ 901, 3925(a), graded as an M-3. At the conclusion of the Preliminary Hearing, the Magisterial District Justice dismissed the charges of Criminal Attempt to Commit Receiving Stolen Property and Criminal Attempt to Commit Theft by Unlawful Taking.

By Information filed February 9, 2018, the Commonwealth charged [Lambert] with one (1) count (Count I) of Criminal Attempt to Commit Burglary, 18 Pa.C.S.A. §§ 901, 3502(a)(4), graded as an F-2; one (1) count (Count II) of Criminal Attempt to Commit Criminal Trespass, 18 Pa.C.S.A. §§ 901, 3503(a)(1 )(ii), graded as an F-2; two (2) counts (Counts III and IV) of Criminal Use of a Communication Facility, 18 Pa.C.S.A. § 7512(a), graded as an F-3; two (2) counts (Counts V and VI) of Possessing Instruments of Crime, 18 Pa.C.S.A. § 907(a), graded as an M-1; one (1) count (Count VII) of Prohibited Offensive Weapons, 18 Pa.C.S.A. § 908(a), graded as an M-1; and seven (7) counts (Counts VIII - XIV) of Criminal Conspiracy, 18 Pa.C.S.A. § 903(a)(1 ), -(2), with the objectives being Burglary, Criminal Trespass, Criminal Use of a Communication Facility, Possessing Instruments of Crime, Prohibited Offensive Weapons, Theft by Unlawful Taking, and Receiving Stolen Property.

[Lambert] filed an Omnibus Pretrial Motion on April 16, 2018. In his Omnibus Pretrial Motion, [Lambert] brought a Motion

- 3 -

to Dismiss/Motion for Writ of Habeas Corpus and a Motion for Compulsory Disclosure, Discovery, and Inspection. The Motion for Compulsory Disclosure, Discovery, and Inspection was addressed in a separate Order and is not implicated in this appeal. On May 4, 2018 [Lambert] filed a Motion to Suppress. [He] also submitted a Memorandum of Law in support of his Motions, although it does not appear to have been filed.

[The trial court] held a hearing on [Lambert]'s Motion to Dismiss/Motion for Writ of Habeas Corpus and his Motion to Suppress on October 29, 2018. With respect to the *habeas* Motion, the Commonwealth and the defense stipulated that the Commonwealth would rely on the transcript of the Preliminary Hearing and not supplement that transcript with further evidence. By Order dated February 28, 2019, … [the trial court] denied [Lambert]'s Motion to Suppress but granted in part and denied in part his Motion to Dismiss/Motion for Writ of Habeas Corpus. With respect to the Motion to Dismiss/Motion for Writ of Habeas Corpus, [the court] determined that the Commonwealth failed to establish a *prima facie* case on the charges of Criminal Attempt to Commit Burglary and Criminal Attempt to Commit Criminal Trespass, and [the court] dismissed those charges. With respect to the remaining charges [the court] determined that the Commonwealth had met its burden.

[Lambert] was tried before a jury over the course of six (6) days: May 7, 2019, May 8, 2019, May 9, 2019, May 10, 2019, May 13, 2019, and May 14, 2019. Further modifications by the Commonwealth were made to the charges levied, such that ultimately the charges presented to the jury included only the following: Count I – Criminal use of a Communication Facility, 18 Pa.C.S.A. § 7512(a); Count II – Possessing Instruments of Crime, 18 Pa.C.S.A. § 907(a); Count III – Criminal Conspiracy to Commit Burglary, 18 Pa.C.S.A. §§ 903(a)(1), -(2), 3502(a)(4); Count IV – Criminal Conspiracy to Commit Criminal Trespass, 18 Pa.C.S.A. §§ 903(a)(1), -(2), 3503(a)(1)(ii); Count V – Criminal Conspiracy to Commit Possessing Instruments of Crime, 18 Pa.C.S.A. §§ 903(a)(1), -(2), 907(a); and Count VI – Criminal Conspiracy to Commit Theft by Unlawful Taking, 18 Pa.C.S.A. §§ 903(a)(1), -(2), 3921 (a). The jury convicted [Lambert] on all charges.

[The trial court] ordered a Pre-Sentence Investigative Report on July 10, 2019, after it was brought to the [c]ourt's attention that one had not been ordered, and deferred sentencing

with the agreement of the parties.… Finally, [Lambert] was sentenced on November 19, 2019.

[The trial court] sentenced [Lambert] as follows: on Count III, Criminal Conspiracy to Commit Burglary, [Lambert] received a term of two and a half (2 ½) years to five (5) years in a State Correctional Facility plus a fine of $10.00; on Count I, Criminal Use of a Communication Facility, [he] received a term of one and a half (1 ½) years to four (4) years in a State Correctional Facility, to run consecutive to the sentence imposed on Count Ill; on Count II, Possessing Instruments of Crime, [he] received a sentence of two (2) years of probation, to run consecutive to the sentence imposed on Count I; on Count V, Conspiracy to Commit Possessing Instruments of Crime, [the court] determined that this offense merged with Count II and did not impose a sentence on Count V; on Count VI , Criminal Conspiracy to Commit Theft by Unlawful Taking, [the court] determined that this offense merged with Count III, and so [it] did not impose a sentence on this conviction; finally, with respect to Count IV, Criminal Conspiracy to Commit Criminal Trespass, [the court] imposed no further penalty upon the [Lambert]. Thus, [Lambert]'s aggregate term of imprisonment is four (4) to nine (9) years in a State Correctional Facility followed by two (2) years of consecutive probation. [The court] gave [Lambert] credit for time served from November 24, 2017 through November 19, 2019, directed him to have no criminal contact with his co-defendants, and ordered him to pay the costs of prosecution. [Lambert] did not file a post-sentence motion.

Trial Court Opinion, 2/27/2020, at 1-6. This timely appeal followed.[2]

In his first argument, Lambert contends the trial court improperly denied

his motion to suppress. He claims police lacked reasonable suspicion or

_____

[2] The trial court directed Lambert to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on December 19, 2019. Lambert complied with the order by filing a statement on January 8, 2020. Thereafter, the trial court issued a Pa.R.A.P. 1925(a) opinion on February 27, 2020.

probable cause to stop the vehicle he was riding in. **See** Appellant's Brief, at 18-28.

In reviewing the denial of a motion to suppress, this Court must determine:

> whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review ... Our scope of review is limited to the evidence presented at the suppression hearing.

**Commonwealth v. Thran**, 185 A.3d 1041, 1043 (Pa. Super. 2018) (citations omitted), *appeal denied*, 195 A.3d 558 (Pa. 2018).

Here, the trial court found Lambert waived his suppression issue because he did not properly preserve the claim. **See** Trial Court Opinion, 2/27/2020, at 41. This determination is supported by the record.

In his motion to suppress, Lambert briefly makes an allegation that the traffic stop was conducted without reasonable suspicion or probable cause. **See** Motion to Suppress, 5/4/2018, at ¶ 4. However, he focuses the majority of his argument on the assertion that law enforcement conducted a warrantless search of the vehicle, no exception to the warrant requirement

was established, and that the subsequent arrest was not supported by probable cause. *See* Motion to Suppress, 5/4/2018, at ¶¶ 9-19.

At the October 2018 suppression hearing, the following exchange clarified the scope of Lambert's argument:

> [The Commonwealth]: Your Honor, as a preliminary motion, I would ask that [defense counsel]'s motion to suppress be dismissed as a matter of law, your Honor.
>
> He's seeking suppression over the search of a vehicle. The search of the vehicle that belonged to William Roussos[, the driver and Lambert's co-conspirator]. Under Pennsylvania law, your Honor, he has no standing to be able to address that particular issue in Pennsylvania. We're dealing with issues of search and seizure. The defendant must establish standing to challenge and they must also demonstrate a reasonable expectation of privacy in the property searched. Commonwealth versus Black, 758 A.2nd 1253.
>
> In cases involving the possessory offense, it is well established that a possessory offense automatically defers standing to object to a search, Commonwealth versus Peterson, 636 A.2nd 615, but, having brought any such claim, those with standing must demonstrate its merits, and the burden is on the defense, by showing his or her reasonable or legitimate expectation of privacy in the premises. Again, Commonwealth versus Peterson and Commonwealth versus Cameron, 561 A.2nd 783.
>
> So the inquiry whether the defendant had a reasonable expectation of privacy for standing purposes in a non-possessory offense is no different from the inquiry when analyzing whether the policy conducted themselves a recognized zone of privacy. Commonwealth versus Duncan, 817 A.2nd 455.
>
> He has to establish before he goes forward with this hearing how his client had a reasonable expectation of privacy in the vehicle belonging to William Roussos, otherwise, your Honor, he had no basis to challenge under Pennsylvania law.
>
> THE COURT: All right.

[Defense counsel]: If I may address the court.

THE COURT: Yes.

[Defense counsel]: **My motion to suppress was not only based on the search but on the arrest. We have standing to challenge the arrest. This was a warrantless arrest.** I think on that alone, I agree in that regard. I didn't realize when I filed this that there had been a consent made by Mr. Roussos and that's why I filed it that way; however, **I'm also challenging the actual arrest of Mr. Lambert.**

[The Commonwealth]: I would ask, your Honor, then he state on the record what evidence he's actually seeking to suppress, because if it's something that was found on his person, obviously that becomes an issue, but he can't suppress the search of the vehicle again, because he has no reasonable expectation of privacy of the vehicle.

[Defense counsel]: I'm not --

THE COURT: Hold on before any more argument. Do you have a spare copy of your motion to suppress or does anyone?

[Defense counsel]: I don't, but I can hand up my copy.

THE COURT: Remind me to give it back to you at the end, Counsel.

[Defense counsel]: Yes, your Honor.

THE COURT: I'm having a difficult time locating it. I know we had it earlier.

[Defense counsel]: Your Honor, if I may, think we ought to put on the record --

THE COURT: You were going to say something and I interrupted you. Go ahead.

[Defense counsel]: **The issue I'm now seeking to suppress is the actual arrest**. **So, there wasn't any reasonable suspicion or probable cause. There was just a stop of the vehicle and all of the occupants were detained and**

**arrested. So, I'm going to that suppression of the actual arrest.**

[The Commonwealth]: Your Honor, you can't suppress the body. You can't suppress the arrest. All you can suppress is evidence that flows from the illegal activity. So, unless he's specifically citing something that the police got from him, whether a statement or something that was found on his person during a search incident to arrest, there's nothing to suppress with an arrest.

His motion all deals with a search. It talks about it back and forth and just saying that there's -- he does mention no probable cause to arrest but he's not mentioning or stating with particularity as required in the rule what it is that he's seeking to suppress. So, if he's not seeking what he's saying that is flowing from the illegal arrest, there is nothing that the Commonwealth can do to regress it.

If he's saying that he wants to suppress all of the items that were found in the vehicle, it goes back to the original issue, he has no expectation of privacy in the vehicle because the vehicle doesn't belong to him, therefore he can't challenge it as a matter of law.

[Defense counsel]: Your Honor, I have no further argument on the matter.

[The Commonwealth]: It's their burden to show that he has a reasonable expectation of privacy, your Honor and I would again like to repeat that.

[Defense counsel]: Your Honor, he is charged with conspiracy, with possession of instruments of crime, with possession of prohibited offensive weapons.

They're claiming he was in possession of those and I think that grants standing. Whether or not -- my client did not possess instruments of crime, did not possess prohibited offensive weapons. If they concede that, then I guess I have no argument.

THE COURT: [Roussos' counsel], you joined in this motion?

[Roussos' counsel]: I filed an independent one, seeking to suppress the stop.

THE COURT: But you're not disputing consent?

[Roussos' counsel]: No, I'm not. No, Mr. Roussos indeed was the driver of the car. It was his car and he consented to the police officer to look around the back of it.

[The Commonwealth]: Mr. Roussos is in a completely different posture, your Honor, because it's his vehicle, so obviously I'm not going to challenge [Roussos' counsel's] expectation of privacy on that.

THE COURT: I understand that, but I believe we wouldn't be taking any different evidence today. Is that fair to say?

[The Commonwealth]: The difference being [defense counsel] would have an opportunity to cross-examine and again, I don't feel that's appropriate, given the fact that he has not established that his client has a reasonable expectation of privacy and he's not indicated in any way, shape or form how his client has any reasonable expectation of privacy in Mr. Roussos' vehicle.

THE COURT: Do either of you have authority for me on your position?

[Defense counsel]: Not today, your Honor, but I can do some research and provide that to you.

…

THE COURT: … My immediate reaction was that [the Commonwealth] has a point, certainly as to the items. Any physical evidence retrieved from the vehicle as it relates to your client and his ability to fight this out on the grounds of expectation of privacy, but your motion, it did contain also, at least in the wherefore clause or somewhere in there, it mentions statements or admissions and so forth. Are we dealing with any of these things as it relates to your clients?

[Defense counsel]: Yes, we should be regarding the intercepted calls.

THE COURT: Which were before, correct?

[The Commonwealth]: Correct.

THE COURT: Before the stop.

[The Commonwealth]: There is no statement made by his client. I believe from the former detective, he [invoked] his rights so he was never interviewed.

THE COURT: So there was never anything written, oral or taped?

[Roussos' counsel]: Recorded or anything.

THE COURT: Any other kind of statement or admission on behalf of [defense counsel]'s client that would be at or subsequent to the stop?

[The Commonwealth]: Then I believe the Commonwealth is correct.

So, I'm going to grant your motion, your oral motion, [Commonwealth] as it relates to Jonathan Lambert.

[The Commonwealth]: Thank you, your Honor.

THE COURT: It doesn't have any effect on Mr. Roussos' motion.

[Defense counsel], **if you would like to place anything else on the record, I will let you do that**.

[Defense counsel]: **No, your Honor. I think I've covered it.** I think we have standing. They're charging with possession crimes. You know, charging him with possession of instruments of crime and prohibited offensive weapons, I think that's a basis for a standing. If the Court feels otherwise, I understand and accept that.

THE COURT: Well, based on -- I reviewed your motion again and it is all based on the -- it appears as though it was drafted not knowing that there was a consent by the owner.

[Defense counsel]: That's correct.

- 11 -

> THE COURT: Which is not being disputed at this point, so I think it invalidates or renders moot much of that. Actually, all of the argument that's within your motion which is why I'm granting the Commonwealth's motion.
>
> [Defense counsel]: I understand.

N.T., 10/29/2018, at 5-13 (emphases added).

From this exchange, we first conclude that defense counsel was unaware that the driver of the vehicle and Lambert's co-defendant, Roussos, had given his consent to allow police to search his vehicle. *See id*., at 7. This circumstance did not, as the Commonwealth argued at the hearing, prohibit Lambert from challenging the validity of the stop. *See Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa. 2000) (noting that government has heightened standard for establishing consent in the wake of an illegal stop); *see also Commonwealth v. Shabezz*, 129 A.3d 529, 535 (Pa. Super. 2015) (holding that passenger of stopped vehicle had standing to seek suppression of evidence garnered from search of vehicle on the basis that the stop was illegal). Nor did it prohibit Lambert from seeking to suppress items seized from the vehicle. *See Shabezz*, 129 A.3d at 535.

However, we also conclude that Roussos's consent altered the fundamental question before the suppression court. No longer was the issue solely whether the police had probable cause or reasonable suspicion to stop the vehicle. If the trial court concluded that the stop was in fact illegal, this would not, by itself, be cause for suppression of the evidence in the car. Rather, suppression would only be required if the Commonwealth failed to

- 12 -

establish that Roussos's consent was voluntarily given under the circumstances. *See Strickler*, 752 A.2d at 901. This is a distinct factual and legal issue from the issue of whether police had sufficient reasons to effectuate the stop in the first place.

Finally, we observe that Lambert's counsel did not raise a challenge to the voluntariness of Roussos's consent.

It is well-settled that an issue not first presented to the trial court is waived on appeal. *See* Pa.R.A.P. 302(a). This Court has previously held that "appellate review of [a ruling on] suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." *Commonwealth v. Little*, 903 A.2d 1269, 1272-1273 (Pa. Super. 2006); *see also* Pa.R.Crim.P. 581(D) (explaining that an omnibus pretrial motion must "state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof). Moreover, an issue that is raised before the court but abandoned at a subsequent hearing is waived for appellate purposes. *See Commonwealth v. Leaner*, 202 A.3d 749, 765 n.3 (Pa. Super. 2019).

Lambert briefly alleged in his motion to suppress that the traffic stop was conducted without reasonable suspicion or probable cause, but he did not further elaborate on the claim with any explanation or support from the record. Nor, as noted previously, did Lambert orally raise a challenge to

Roussos' consent. Under these circumstances, he failed to state an argument for suppressing evidence seized from Roussos's vehicle. ***See Little***, 903 A.2d at 1272-1273. Under ***Leaner***, Lambert abandoned the argument at the suppression hearing by failing to raise it in any manner. ***See Leaner***, 202 A.3d at 765 n.3.[3]

It merits mention that the court gave Lambert's counsel the opportunity to raise any additional issues at the suppression hearing, and counsel declined to do so. ***See*** N.T., 10/29/2018, at 12-13. Accordingly, because Lambert did not properly preserve an argument capable of supporting suppression of the evidence, he has waived it.

Further, Lambert did not identify the suppression court's ruling that he lacked standing as a matter complained of on appeal in his Pa.R.A.P. 1925(b) statement. As a result, any contention that the court erred in this regard is waived. ***See Commonwealth v. Pacheco***, 227 A.3d 358, 370 n.13 (Pa. Super. 2020).

In Lambert's second argument, he complains the court erred in denying his petition for writ of *habeas corpus* by finding that the Commonwealth had

---

[3] We note the trial court addressed the merits of Lambert's argument concerning the stop in its February 28, 2019 order. ***See*** Order, 2/28/2019, at 3-5 n.1. Nevertheless, the court subsequently explained this part of the order was "a nullity because … [it] had already dismissed [Lambert]'s Motion to Suppress at the beginning of the suppression hearing, prior to the testimony of the first witness, thereby precluding defense counsel from putting on any evidence with respect thereto or cross-examining the Commonwealth's witnesses." Trial Court Opinion, 2/27/2020, at 40.

met its burden of establishing a *prima facie* case for the offenses held for trial.

***See*** Appellant's Brief, at 28. He states the Commonwealth's proof at the preliminary hearing merely amounted to phone calls Lambert and his incarcerated brother shared with Roussos and that the police subsequently decided to pull over a car, driven by Roussos and Lambert being a passenger. ***See id.***, at 28. Lambert alleges:

> Whoever was in the car had not committed any acts which would permit any reasonable fact finder or any reasonable *prima facie* appraiser to decide that there was enough evidence that any of these people were attempting to commit a burglary, or that criminal activity was afoot. It's not enough to be present at a place even a burglary has been committed.

***Id.***, at 31-32.

Moreover, he contends the trial court did not apply the correct standard of proof because it relied on the testimony presented at the preliminary hearing which was before a magistrate district judge. Lambert states, "By finding for the Commonwealth on no additional proof being submitted, and the Commonwealth relying on the transcript from the preliminary hearing, [the trial court] incorrect[ly] allowed the matter to be submitted to the jury." ***Id.***, at 32. He states:

> The police cannot possibly have had enough proof to have been the subject of a criminal attempt of burglary because the suspects weren't even at a place where any burglary might have occurred. When these people were charged with criminal attempt of burglary, they were in a car. The car was followed in a circular route for a period of about 20 minutes. They went out and back. They didn't stop anywhere. They weren't anywhere which might have been burgled, and they certainly didn't stop anywhere and do any actual entry to any place.

*Id.*, at 33. He further argues there was no evidence of an agreement among the individuals or that an overt step was taken to support a conspiracy theory, and that the police acted prematurely. *Id.*, at 33-35.

Our scope and standard of review regarding a *habeas corpus* petition is as follows:

> We review a trial court's grant [or denial] of a pre-trial *habeas corpus* motion *de novo* and our scope of review is plenary. *See Commonwealth v. Dantzler*, 135 A.3d 1109, 1112 (Pa. Super. 2016) (*en banc*).
>
> As this Court explained in *Dantzler*:
>
> A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case. To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof.

*Commonwealth v. Carper*, 172 A.3d 613, 620 (Pa. Super. 2017) (citation omitted).

> In reviewing a trial court's order granting [or denying] a defendant's petition for writ of *habeas corpus*, we "must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error." . . . Notably, the Commonwealth does not have to prove the defendant's guilt beyond a reasonable doubt. Further, the evidence must be considered in the light most favorable to the Commonwealth so that inferences that would support a guilty verdict are given effect.

***Commonwealth v. Santos***, 876 A.2d 360, 363 (Pa. 2005) (citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, we conclude that there is no merit to this issue. The trial court opinion properly disposes of the question presented. ***See*** Trial Court Opinion, 2/27/2020, at 7-39 (concluding (1) any alleged failure to establish a *prima facie* case at the hearing based on Lambert's *habeas corpus* petition was immaterial because, at trial, the Commonwealth satisfied its burden by proving the offenses beyond a reasonable doubt; (2) with respect to the motion, the parties stipulated that the Commonwealth would not supplement the hearing with any additional evidence but would rely on the preliminary hearing transcript; and (3) the *prima facie* evidence at the preliminary hearing, including that Lambert and his cohorts were traveling in the middle of the night *via* a circuitous route, on the day appointed for a criminal enterprise as discovered by the police during their investigation of the men's numerous recorded prison phone calls, all dressed in black, with tools such as a stun gun, night-vision googles, and machetes, as well as Roussos' confession were sufficient to support Lambert's complicity in the various crimes presented to the jury for consideration at his

trial).[4] We adopt the trial court's analysis as our own and affirm on that basis.

Accordingly, Lambert's second argument fails.

Judgment of sentence affirmed.

Judge Pellegrini joins the memorandum.

Judge Nichols concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/24/20

---

[4] We note the trial court mentions **Commonwealth v. Ricker**, 120 A.3d 349 (Pa. Super. 2015) (**Ricker I**), *appeal dismissed as improvidently granted*, 170 A.3d 494 (Pa. 2017) (*per curiam*) (**Ricker II**), regarding the notion that hearsay evidence has been held to be sufficient alone to establish a *prima facie* case, but stated that "the evidence here was not comprised solely of hearsay testimony[.]". **See** Trial Court Opinion, 2/27/2020, at 27. It merits mention the Pennsylvania Supreme Court recently determined Pennsylvania Rule of Criminal Procedure 542(E) does not permit exclusive reliance on hearsay evidence to establish all elements of all crimes for purposes of establishing a *prima facie* case at a defendant's preliminary hearing and thereby, expressly disapproved **Ricker I**. **See Commonwealth v. McClelland**, No. 2 WAP 2018, 2020 WL 4092109 (Pa. July 21, 2020).

| COMMONWEALTH OF PENNSYLVANIA | : IN THE COURT OF COMMON PLEAS |
|---|---|
| vs. | : CHESTER COUNTY, PENNSYLVANIA |
| JONATHAN R. LAMBERT | : NO. 15-CR-0000315-2018 |
| | : CRIMINAL ACTION—LAW |

Nicholas J. Casenta, Jr., Esquire, Chief Deputy District Attorney, and
  Carlos A. Barraza, Esquire, for the Commonwealth
Phillip A. Simon, Esquire, for the Defendant

## OPINION *SUR* RULE 1925(a)

Before this Honorable reviewing Court is the counseled direct appeal of Defendant Jonathan R. Lambert from the Judgment of Sentence entered against him on November 19, 2019. Defendant filed his Notice of Appeal on December 17, 2019, within thirty (30) days of the date of the imposition of sentence; consequently, Defendant's Notice of Appeal is timely. *See* Pa. R.A.P. 903(c)(3)("In a criminal case in which no post-sentence motion has been filed, the notice of appeal shall be filed within 30 days of the imposition of the judgment of sentence in open court.").

## I. FACTUAL AND PROCEDURAL HISTORY

The facts of this matter in a nutshell are that the Defendant participated in a conspiracy to commit Burglary and other related offenses in Coatesville, Chester County, Pennsylvania over the course of six (6) days from November 18, 2017 through November 23, 2017. Defendant's participation was revealed in two (2) recorded phone calls he received from his brother, Douglas Lambert, who was in prison when he made these and other recorded calls to the members of the conspiracy, surveillance conducted by the Coatesville Police Department upon their receipt of the records of these calls, and Defendant's presence with two (2) of the co-conspirators during a traffic stop at

1

approximately 11:30 p.m. on the night of November 23, 2017, Thanksgiving night, during which stop various tools, including ski masks, wire bolt cutters, night-vision goggles, machetes, and other implements utilized in burglaries were found in the car. Defendant was taken into custody. No burglary was ever consummated.

A Police Criminal Complaint was filed on November 24, 2017 charging Defendant with Burglary and related offenses. At the Preliminary Hearing held on January 29, 2018, the Commonwealth amended the Police Criminal Complaint by withdrawing the following offenses: Burglary, 18 Pa. C.S.A. § 3502(a); Criminal Conspiracy to Commit Burglary, 18 Pa. C.S.A. §§903, 3502(a); Criminal Use of Communication Facility, 18 Pa. C.S.A. § 7512(a); and Possessing Instruments of Crime, 18 Pa. C.S.A. § 907(a).

The Commonwealth then added the following charges: Criminal Conspiracy to Commit Burglary, 18 Pa. C.S.A. §§ 903, 3502(a)(4), graded as an F-2; Criminal Attempt to Commit Burglary, 18 Pa. C.S.A. §§ 901, 3502(a)(4), graded as an F-2; two (2) counts of Criminal Use of a Communication Facility, 18 Pa. C.S.A. § 7512(a), graded as F-3's; Criminal Conspiracy to Commit Criminal Use of a Communication Facility, 18 Pa. C.S.A. §§ 903, 7512(a), graded as an F-3; Prohibited Offensive Weapons, 18 Pa. C.S.A. § 908(a), graded as an M-1; Criminal Conspiracy to Commit Prohibited Offensive Weapons, 18 Pa. C.S.A. §§ 903, 908(a), graded as an M-1; two (2) counts of Possessing Instruments of Crime, 18 Pa. C.S.A. § 907(a), graded as an M-1; Criminal Conspiracy to Commit Possessing Instruments of Crime, 18 Pa. C.S.A. §§ 903, 907(a), graded as an M-1; Criminal Conspiracy to Commit Criminal Trespass, 18 Pa. C.S.A. §§ 903, 3503(a)(1)(ii), graded as an F-2; Criminal Attempt to Commit Criminal Trespass, 18

2

Pa. C.S.A. §§ 901, 3503(a)(1)(ii), graded as an F-2; Criminal Conspiracy to Commit Theft by Unlawful Taking or Disposition, 18 Pa. C.S.A. §§ 903, 3921(a), graded as an M-3; Criminal Attempt to Commit Theft by Unlawful Taking or Disposition, 18 Pa. C.S.A. §§ 901, 3921(a), graded as an M-3; Criminal Conspiracy to Commit Receiving Stolen Property, 18 Pa. C.S.A. §§ 903, 3925(a), graded as an M-3; and Criminal Attempt to Commit Receiving Stolen Property, 18 Pa. C.S.A. §§ 901, 3925(a), graded as an M-3. At the conclusion of the Preliminary Hearing, the Magisterial District Justice dismissed the charges of Criminal Attempt to Commit Receiving Stolen Property and Criminal Attempt to Commit Theft by Unlawful Taking.

By Information filed February 9, 2018, the Commonwealth charged the Defendant with one (1) count (Count I) of Criminal Attempt to Commit Burglary, 18 Pa. C.S.A. §§ 901, 3502(a)(4), graded as an F-2; one (1) count (Count II) of Criminal Attempt to Commit Criminal Trespass, 18 Pa. C.S.A. §§ 901, 3503(a)(1)(ii), graded as an F-2; two (2) counts (Counts III and IV) of Criminal Use of a Communication Facility, 18 Pa. C.S.A. § 7512(a), graded as an F-3; two (2) counts (Counts V and VI) of Possessing Instruments of Crime, 18 Pa. C.S.A. § 907(a), graded as an M-1; one (1) count (Count VII) of Prohibited Offensive Weapons, 18 Pa. C.S.A. § 908(a), graded as an M-1; and seven (7) counts (Counts VIII – XIV) of Criminal Conspiracy, 18 Pa. C.S.A. § 903(a)(1), -(2), with the objectives being Burglary, Criminal Trespass, Criminal Use of a Communication Facility, Possessing Instruments of Crime, Prohibited Offensive Weapons, Theft by Unlawful Taking, and Receiving Stolen Property.

Defendant filed an Omnibus Pretrial Motion on April 16, 2018. In his Omnibus Pretrial Motion, Defendant brought a Motion to Dismiss/Motion for Writ of

3

Habeas Corpus and a Motion for Compulsory Disclosure, Discovery, and Inspection. The Motion for Compulsory Disclosure, Discovery, and Inspection was addressed in a separate Order and is not implicated in this appeal. On May 4, 2018 Defendant filed a Motion to Suppress. Defendant also submitted a Memorandum of Law in support of his Motions, although it does not appear to have been filed.

We held a hearing on Defendant's Motion to Dismiss/Motion for Writ of Habeas Corpus and his Motion to Suppress on October 29, 2018. With respect to the *habeas* Motion, the Commonwealth and the defense stipulated that the Commonwealth would rely on the transcript of the Preliminary Hearing and not supplement that transcript with further evidence. By Order dated February 28, 2019, which we incorporate herein by reference and refer to this Honorable reviewing Court, we denied Defendant's Motion to Suppress but granted in part and denied in part his Motion to Dismiss/Motion for Writ of Habeas Corpus. With respect to the Motion to Dismiss/Motion for Writ of Habeas Corpus, we determined that the Commonwealth failed to establish a *prima facie* case on the charges of Criminal Attempt to Commit Burglary and Criminal Attempt to Commit Criminal Trespass, and we dismissed those charges. With respect to the remaining charges we determined that the Commonwealth had met its burden.

Defendant was tried before a jury over the course of six (6) days: May 7, 2019, May 8, 2019, May 9, 2019, May 10, 2019, May 13, 2019, and May 14, 2019. Further modifications by the Commonwealth were made to the charges levied, such that ultimately the charges presented to the jury included only the following: Count I—Criminal use of a Communication Facility, 18 Pa. C.S.A. § 7512(a); Count II—Possessing Instruments of Crime, 18 Pa. C.S.A. § 907(a); Count III—Criminal Conspiracy to Commit

4

Burglary, 18 Pa. C.S.A. §§ 903(a)(1), -(2), 3502(a)(4); Count IV—Criminal Conspiracy to Commit Criminal Trespass, 18 Pa. C.S.A. §§ 903(a)(1), -(2), 3503(a)(1)(ii); Count V—Criminal Conspiracy to Commit Possessing Instruments of Crime, 18 Pa. C.S.A. §§ 903(a)(1), -(2), 907(a); and Count VI—Criminal Conspiracy to Commit Theft by Unlawful Taking, 18 Pa. C.S.A. §§ 903(a)(1), -(2), 3921(a). The jury convicted Defendant on all charges.

We ordered a Pre-Sentence Investigative Report on July 10, 2019, after it was brought to the Court's attention that one had not been ordered, and deferred sentencing with the agreement of the parties. Sentencing was rescheduled to August 15, 2019. On July 24, 2019, the August 15, 2019 sentencing date was rescheduled because of defense counsel's unavailability during the week of August 12, 2019. Sentencing was rescheduled for September 9, 2019, but was continued by agreement of the parties due to the unavailability of certain witnesses for the defense. Sentencing was rescheduled for October 3, 2019, but was continued on the motion of the Commonwealth without objection by the defense. Finally, Defendant was sentenced on November 19, 2019.

We sentenced Defendant as follows: on Count III, Criminal Conspiracy to Commit Burglary, Defendant received a term of two and a half (2 ½) years to five (5) years in a State Correctional Facility plus a fine of $10.00; on Count I, Criminal Use of a Communication Facility, Defendant received a term of one and a half (1 ½) years to four (4) years in a State Correctional Facility, to run consecutive to the sentence imposed on Count III; on Count II, Possessing Instruments of Crime, Defendant received a sentence of two (2) years of probation, to run consecutive to the sentence imposed on Count I; on Count V, Conspiracy to Commit Possessing Instruments of Crime, we determined that

5

this offense merged with Count II and did not impose a sentence on Count V; on Count VI, Criminal Conspiracy to Commit Theft by Unlawful Taking, we determined that this offense merged with Count III, and so we did not impose a sentence on this conviction; finally, with respect to Count IV, Criminal Conspiracy to Commit Criminal Trespass, we imposed no further penalty upon the Defendant. Thus, Defendant's aggregate term of imprisonment is four (4) to nine (9) years in a State Correctional Facility followed by two (2) years of consecutive probation. We gave Defendant credit for time served from November 24, 2017 through November 19, 2019, directed him to have no criminal contact with his co-defendants, and ordered him to pay the costs of prosecution. Defendant did not file a post-sentence motion.

On December 17, 2019 Defendant filed his Notice of Appeal.[1] On December 19, 2019 we issued an Order for Concise Statement of Errors Complained of on Appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Therein, we directed Defendant to file within twenty-one (21) days a concise statement of the issues he wished to raise on appeal. Defendant timely complied by filing his Concise Statement on January 8, 2020. In his Concise Statement, Defendant raises the following issues:

> 1. The Honorable Trial Court erred and abused its discretion in denying Defendant's Petition to Suppress Evidence as the vehicle stop was illegal.
>
> 2. The Honorable Trial Court erred and abused its discretion in denying Defendant's Petition for Writ of Habeas Corpus finding the Commonwealth had met its burden of establishing a *prima facie* case for the offenses held at trial.

---

[1] Appellate counsel is not the attorney who represented the Defendant at trial.

6

(Deft.'s Concise Statement, 1/8/2020, at 1). Having reviewed the record in light of the relevant constitutional, statutory, and decisional law, we are now prepared to make the following recommendations with regard to the merits of Defendant's claims. For chronological purposes we will address Defendant's arguments in reverse order.

## II. ANALYSIS

### A. Motion to Dismiss/Motion for Writ of Habeas Corpus

In his appeal, Defendant challenges this Court's denial of his *habeas* Motion with respect to the charges that were ultimately held for trial. As the charges for which Defendant was convicted are fewer than those charged in the Police Criminal Complaint and the Information, and represent the charges for which he was actually convicted and therefore are the only charges for which he could possibly have suffered prejudice from the Court's decision on his *habeas*, we will confine our analysis to only those charges that were presented to the jury for consideration.

A petition for writ of *habeas corpus* is the proper means for testing a pre-trial finding that the Commonwealth has presented sufficient evidence to establish a *prima facie* case. *Commonwealth v. Dantzler*, 135 A.3d 1109 (Pa. Super. 2016). To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offenses as well as the defendant's complicity therein; in an effort to meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof. *Commonwealth v. Dantzler*, 135 A.3d 1109 (Pa. Super. 2016). Proof beyond a reasonable doubt is not required at the pre-trial *habeas* stage, but the Commonwealth's evidence must be such that, if accepted as true, it would justify a trial court in submitting

7

the case to a jury. *Commonwealth v. Carroll*, 936 A.2d 1148 (Pa. Super. 2007), *appeal denied*, 947 A.2d 735 (Pa. 2008), *abrogated on other grounds by Commonwealth v. Karetny*, 880 A.2d 505 (Pa. 2005) *as stated in Commonwealth v. Dantzler*, 135 A.3d 1109 (Pa. Super. 2016)(abuse of discretion standard employed in intermediate appellate courts for review of *habeas corpus* decisions is unsound in light of *Karetny, surpa*).

In the course of deciding a pre-trial *habeas* petition, a court must view the evidence and its reasonable inferences in the light most favorable to the Commonwealth; suspicion and conjecture, however, are unacceptable. *Id.* On appeal, a trial court's decision to grant or deny a petition for writ of *habeas corpus* is subject to plenary review by the appellate courts. *Commonwealth v. Karetny*, 880 A.2d 505 (Pa. 2005). The trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime. *Commonwealth v. Karetny*, 880 A.2d 505 (Pa. 2005). The evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's scope of review is plenary and its standard of review is *de novo*. *See Commonwealth v. Karetny*, 880 A.2d 505 (Pa. 2005)(the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case is a question of law as to which an appellate court's review is plenary); *Commonwealth v. Graham*, 109 A.3d 733 (Pa. Super. 2015), *appeal denied*, 126 A.3d 1282 (Pa. 2015)(the appellate court's scope of review in making a determination on a question of law is plenary and, as with all questions of law, the appellate standard of review is *de novo*).

Having reviewed the record and the relevant jurisprudence, we would respectfully submit that this issue has no merit and should be denied and dismissed for the following reasons.

First, even if there were any errors in the Court's decision concerning Defendant's Motion to Dismiss/Motion for Writ of Habeas Corpus, Defendant was convicted after undergoing a trial utilizing the adversarial process with the burden of proof being beyond a reasonable doubt. Because his charges were subjected to the crucible of the adversary process with the highest level of proof, any error that could arguably have occurred in the disposition of his pre-trial motion, where the standard is only *prima facie*, should be deemed harmless and not a basis for relief on direct appeal.

This position is well established. In *Commonwealth v. Aukstakalnis*, 25 D. & C.4th 139 (Berks 1995), *aff'd*, 671 A.2d 765 (Pa. Super. 1995), the defendant was convicted of various crimes resulting from his assault of his 14 year-old stepson. *Id.* at 141-49. Following the trial court's denial of his post-sentence motion, defendant took a direct appeal. *Id.* at 140. On appeal, the defendant argued that the trial court erred by failing to grant his pre-trial motion for a writ of habeas corpus. *Id.* at 140, 149. In addressing the defendant's claim as part of its Rule 1925(a) Opinion, the trial court set forth the following analysis:

> Defendant alleges error in this court's failure to grant his request for pretrial relief, *i.e.*, a writ of habeas corpus. The Pennsylvania Supreme Court has held that if it is determined at trial that the Commonwealth's evidence is sufficient to be submitted to the jury, then any deficiency in the presentation before a district justice is harmless. *Commonwealth v. Hess*, 489 Pa. 580, 590, 414 A.2d 1043, 1048 (1980). In determining whether to hold a defendant for court, the district justice at the preliminary hearing assesses whether the

9

>Commonwealth established a prima facie case of the defendant's guilt. Pa. R.Crim.P. 143(a). Similarly, a petition for a writ of habeas corpus at the pretrial stage also tests whether the Commonwealth has sufficient evidence to establish a prima facie case. *Commonwealth v. Scott*, 396 Pa. Super. 339, 349, 578 A.2d 933, 936 (1990), *allocatur denied*, 528 Pa. 629, 598 A.2d 283 (1991). Because the same standard is employed at preliminary hearings and pretrial habeas corpus hearings, the rule in *Hess* would logically apply in the instant case and the determination that the evidence of the Commonwealth was sufficient to be submitted to the jury renders any alleged error at the pretrial hearing harmless. Defendant's claim is therefore without merit.

*Commonwealth v. Aukstakalnis*, 25 D. & C.4th 139, 149-50 (Berks 1995), *aff'd*, 671 A.2d 765 (Pa. Super. 1995). *See also Commonwealth v. Maihle*, 2017 WL 1405915 (Pa. Super. 2017), *appeal denied*, 173 A.3d 256 (Pa. 2017)("the failure to establish a *prima facie* case at a hearing on a petition for writ of *habeas corpus* is immaterial when, at trial, the Commonwealth satisfies its burden by proving the offense beyond a reasonable doubt."); *Commonwealth v. Day*, 2016 WL 1120849 * 4 (Pa. Super. 2016)(for text, *see* 144 A.3d 205 (Pa. Super. 2016), *appeal denied*, 145 A.3d 162 (Pa. 2016)("the failure to establish a *prima facie* case at a *habeas corpus* hearing is immaterial when at the trial the Commonwealth satisfies its burden by proving the offense beyond a reasonable doubt."); *Commonwealth v. Ricker*, 120 A.3d 349 (Pa. Super. 2015), *petition for allowance of appeal granted*, 135 A.3d 175 (Pa. 2016), *appeal dismissed as improvidently granted*, 170 A.3d 494 (Pa. 2017)(errors at a preliminary hearing regarding the sufficiency of the evidence are considered harmless if the defendant is found guilty at trial); *Commonwealth v. Troop*, 571 A.2d 1084 (Pa. Super. 1990), *appeal denied*, 584 A.2d 317 (Pa. 1990), *dismissal of post-conviction relief aff'd*, 153 A.3d 1123 (Pa. Super.

2016), *reargument denied* (August 17, 2016)(for text, *see* 2016 WL 4723400 (Pa. Super. 2016))("once a defendant has been convicted at trial, any defect in the preliminary hearing has been satisfied.").

Just as in *Aukstakalnis*, *supra*, the Defendant *sub judice* has contested this Court's denial of part of his Motion to Dismiss/Motion for Writ of Habeas Corpus. Just as in *Aukstakalnis*, *supra*, Defendant had a Preliminary Hearing at which the charges upon which he was convicted were bound over for trial at the Court of Common Pleas, which then determined that the Commonwealth presented sufficient evidence to withstand its burden at the habeas stage. Subsequently, Defendant was tried by a jury who determined that the Commonwealth established Defendant's culpability for all of the charges presented to it for adjudication beyond a reasonable doubt. Because the Preliminary Hearing and the habeas proceeding utilized the same standard of review, and this same analysis, i.e., whether the Commonwealth has established a *prima facie* case, is to be applied by the appellate court on appeal, *Commonwealth v. Young*, 904 A.2d 947 (Pa. Super. 2006), *appeal denied*, 916 A.2d 633 (Pa. 1996), and because Defendant was convicted of all the offenses that were presented to the jury after the evidence had been tested by the standard of proof beyond a reasonable doubt, the rule as stated in *Ricker, supra* and *Aukstakalnis, supra* (*citing Commonwealth v. Hess*, 414 A.2d 1043 (Pa. 1980) concerning the effect of a conviction after trial upon the merits of a challenge to a pretrial habeas decision should apply to bar Defendant's claim here that this Court erred in its rejection of his habeas challenge to the offenses for which he was convicted at trial.

11

However, should this Honorable reviewing Court disagree, we would respectfully submit our analysis of the substantive merit of Defendant's claim as set forth below. Preliminarily, we note, as we stated earlier, that with respect to Defendant's Motion to Dismiss/Motion for Writ of Habeas Corpus, the parties agreed that the Commonwealth would not supplement the hearing with any additional evidence but would rely on the transcript of the Preliminary Hearing. Notwithstanding this, the undersigned utilized the transcript of the Suppression Hearing, which also occurred on October 29, 2018, in addressing the merits of Defendant's habeas. To the extent that it may have been error to utilize the Suppression Hearing transcript to evaluate the merits of Defendant's pre-trial habeas challenge, and we note we have found no jurisprudence on this issue one way or the other, we would respectfully submit that such error, if any, was harmless because the evidence set forth in the Preliminary Hearing transcript was sufficient, *prima facie*, to conclude that the Commonwealth met its burden as to all of the charges for which Defendant was convicted by the jury.

Before we address the sufficiency of the Commonwealth's case at the *habeas* stage for each offense *seriatim*, we will set forth a recitation of the facts gleaned from the Preliminary Hearing transcript as that informs our recommendation as to the merits of Defendant's second issue on appeal.

At the Preliminary Hearing, the Affiant, Detective Jonathan Shave of the Coatesville City Police Department, testified that on November 20, 2017 he received a phone call from Parkesburg Detective Ryan Murtaugh who explained to Detective Shave that he was handling an investigation and had obtained certain recorded prison phone calls which, it may be inferred, might be of interest to Detective Shave. (Preliminary

12

Hearing Transcript, 1/29/18, N.T. 14). Detective Shave obtained the recording from Detective Murtagh on November 20, 2017. (Preliminary Hearing Transcript, 1/29/18, N.T. 14). When Detective Shave listened to the recordings, he recognized the voice of one Douglas Lambert speaking to another unidentified individual. (Preliminary Hearing Transcript, 1/29/18, N.T. 14). Detective Shave knew Douglas Lambert's voice from prior investigations involving him. (Preliminary Hearing Transcript, 1/29/18, N.T. 14). Detective Shave was able to identify that the phone calls originated from the prison where Douglas Lambert was incarcerated at the time. (Preliminary Hearing Transcript, 1/29/18, N.T. 14-15, 49).

The first phone call Detective Shave received occurred on November 18, 2017. (Preliminary Hearing Transcript, 1/29/18, N.T. 16). The phone call was between Douglas Lambert and another person whom Detective Shave was later able to identify via the number called as William Roussos. (Preliminary Hearing Transcript, 1/29/18, N.T. 16, 73). Through an investigation with the prison, Detective Shave learned that Douglas Lambert and William Roussos had been prison cellmates. (Preliminary Hearing Transcript, 1/29/18, N.T. 16). As noted above, the call originated from Douglas Lambert at the prison to Mr. Roussos' phone. (Preliminary Hearing Transcript, 1/29/18, N.T. 14-15, 17).

In this first phone call, Detective Shave heard Douglas Lambert ask Mr. Roussos questions about "helping me out." (Preliminary Hearing Transcript, 1/29/18, N.T. 17). As the call progressed, Detective Shave heard Douglas Lambert state to Mr. Roussos, "Do you remember that situation that we discussed when you were here" and that "that situation is a go." (Preliminary Hearing Transcript, 1/29/18, N.T. 17). Mr.

Roussos responded by saying "Thank you very much. I really need that right now." (Preliminary Hearing Transcript, 1/29/18, N.T. 17). Detective Shave testified that when he heard this phone call, he did not understand to what the men were referring. (Preliminary Hearing Transcript, 1/29/18, N.T. 17).

Detective Shave next reviewed three (3) to four (4) calls that occurred on November 19, 2017, two (2) of which were significant to the present matter. (Preliminary Hearing Transcript, 1/29/18, N.T. 17-21). The first of the batch constituted a call from Douglas Lambert to Mr. Roussos. (Preliminary Hearing Transcript, 1/29/18, N.T. 17-18). In this call, Douglas Lambert tells Mr. Roussos that "[his] peoples just got out." (Preliminary Hearing Transcript, 1/29/18, N.T. 18, 53). Detective Shave did not know at this time what Douglas Lambert meant. (Preliminary Hearing Transcript, 1/29/18, N.T. 18). Detective Shave testified that he heard Douglas Lambert tell Mr. Roussos that Mr. Roussos needed to get in touch with the person who had just got out and, as Detective Shave testified, and explain the situation to him, because Douglas Lambert was not able to talk over the phone." (Preliminary Hearing Transcript, 1/29/18, N.T. 19-20, 53). Again, Detective Shave did not at this time know what the "situation" was. (Preliminary Hearing Transcript, 1/29/18, N.T. 20).

The second call of interest that occurred on November 19, 2017 was a call again made by Douglas Lambert to William Roussos in the evening of that day, which was a Sunday. (Preliminary Hearing Transcript, 1/29/18, N.T. 20). During this call, Douglas Lambert advised Mr. Roussos "that he would need to go out to a location and scout out and get a feel for what he was going to do." (Preliminary Hearing Transcript, 1/29/18, N.T. 20). As the call progressed, Detective Shave heard Mr. Roussos tell

14

Douglas Lambert that he was "probably going to go out tonight after the game, around midnight to get ice cream, if the place is open late." (Preliminary Hearing Transcript, 1/29/18, N.T. 20). Unaware of any establishment in the area that sole ice cream at midnight, Detective Shave testified that he was suspicious of Mr. Roussos' statement. (Preliminary Hearing Transcript, 1/29/18, N.T. 20). Based on his training and experience as a law enforcement officer, Detective Shave thought the two (2) men were speaking in code, that is, using words and phrases to make what the true intention of the discussion is about. (Preliminary Hearing Transcript, 1/29/18, N.T. 21).

Next, Detective Shave reviewed phone calls from Douglas Lambert that took place on November 20, 2017. (Preliminary Hearing Transcript, 1/29/18, N.T. 21). The first of these calls, and the only one from that day that appears to be relevant to the instant proceedings, was a phone call made from Douglas Lambert to Mr. Roussos at 8:45 a.m. (Preliminary Hearing Transcript, 1/29/18, N.T. 21). The first thing that Mr. Lambert said to Mr. Roussos was, "Tell me good news", to which Mr. Roussos replied, "We need to go again." (Preliminary Hearing Transcript, 1/29/18, N.T. 21). Douglas Lambert then stated, "You guys didn't go?" (Preliminary Hearing Transcript, 1/29/18, N.T. 21). Mr. Roussos explained that "they" did go, but they encountered some things they did not expect. (Preliminary Hearing Transcript, 1/29/18, N.T. 21-22). When asked by Douglas Lambert what they encountered, Mr. Roussos replied that "we encountered horses and an old lady that was acting weird. Just things we didn't expect. We have to go again." (Preliminary Hearing Transcript, 1/29/18, N.T. 22).

Detective Shave next reviewed calls that occurred on November 21, 2017. One of these calls was a call from Douglas Lambert to Mr. Roussos wherein they "were

15

discussing the possibility of Thanksgiving Eve, there were going to be a lot of people out." (Preliminary Hearing Transcript, 1/29/18, N.T. 22). Mr. Roussos told Douglas Lambert that "he had an appointment to go to see his PO and he would be getting an ankle bracelet and he described that he would be concerned with his ability to make movement—his ability to move." (Preliminary Hearing Transcript, 1/29/18, N.T. 22). Detective Shave testified that Thanksgiving Eve in 2017 was November 22, 2017. (Preliminary Hearing Transcript, 1/29/18, N.T. 22-23).

In a call that occurred either on November 21, 2017 or November 22, 2017, Detective Shave observed that Douglas Lambert called another number that Detective Shave was able to determine belonged to the Defendant, Jonathan Lambert. (Preliminary Hearing Transcript, 1/29/18, N.T. 23). Detective Shave learned that Defendant was Douglas Lambert's brother and that Defendant had just been released from Chester County Prison on November 19, 2017. (Preliminary Hearing Transcript, 1/29/18, N.T. 23). Based upon this information, Detective Shave inferred that Douglas Lambert must have been referring to his brother, the Defendant, when he stated to Mr. Roussos on November 19, 2017 that his "people just got out." (Preliminary Hearing Transcript, 1/29/18, N.T. 23, 26).

In Douglas Lambert's call to the Defendant made on either November 21, 2017 or November 22, 2017, Douglas Lambert asked Defendant "if everything is going okay." (Preliminary Hearing Transcript, 1/29/18, N.T. 28). Detective Shave testified that Defendant was "clearly agitated in the phone call." (Preliminary Hearing Transcript, 1/29/18, N.T. 28). Defendant stated to Douglas Lambert, "Yo, your man is blingin. I'm thinking he might have went and done it hisself." (Preliminary Hearing Transcript,

1/29/18, N.T. 28). Detective Shave testified that he believed Defendant was referring to Mr. Roussos. (Preliminary Hearing Transcript, 1/29/18, N.T. 28). Detective Shave testified that he did not know what Defendant meant by his statement that something had been done by Douglas Lambert's "man"; that is, Detective Shave did not yet know what that something was. (Preliminary Hearing Transcript, 1/29/18, N.T. 28).

In this phone call, Detective Shave heard Defendant telling Douglas Lambert that "he was concerned." (Preliminary Hearing Transcript, 1/29/18, N.T. 28). Defendant stated, "your man is blingin. I'm getting concerned he is going to go and do the job himself." (Preliminary Hearing Transcript, 1/29/18, N.T. 28). Defendant then stated, "I'm thinking about taking the young boys, Little Lee, Little Prince and going and doing it myself, if you give me the green light. One will come in with me, one will be the lookout." (Preliminary Hearing Transcript, 1/29/18, N.T. 28-29). Detective Shave testified that he believed that "Little Lee" was a reference to co-defendant Lee Fitzgerald Wilson. (Preliminary Hearing Transcript, 1/29/18, N.T. 29). At the time of the Preliminary Hearing, Detective Shave did not know who "Little Prince" was. (Preliminary Hearing, 1/29/18, N.T. 29). Detective Shave testified that the way the men's conversation sounded, it appeared that the "job" was going to be done on the night of November 22, 2017. (Preliminary Hearing Transcript, 1/29/18, N.T. 29).

The date of the next phone call that Detective Shave reviewed was November 23, 2017. (Preliminary Hearing Transcript, 1/29/18, N.T. 30). The call was made in the morning from Douglas Lambert to Mr. Roussos. (Preliminary Hearing Transcript, 1/29/18, N.T. 30). In this phone call, Douglas Lambert asked Mr. Roussos what happened the night before. (Preliminary Hearing Transcript, 1/29/18, N.T. 30).

17

Detective Shave testified that Mr. Roussos sounded confused and replied, "What are you talking about?" (Preliminary Hearing Transcript, 1/29/18, N.T. 30). Douglas Lambert said, "Come on, man, you know what's going on. You were supposed to do it last night." (Preliminary Hearing Transcript, 1/29/18, N.T. 30). Mr. Roussos replied, "I thought it was for tonight", to which Douglas Lambert responded, "Oh, you thought it was for tonight?" (Preliminary Hearing Transcript, 1/29/18, N.T. 30). The phone call was then disconnected. (Preliminary Hearing Transcript, 1/29/18, N.T. 30).

Douglas Lambert then calls his brother, the Defendant. (Preliminary Hearing Transcript, 1/29/18, N.T. 30). Douglas Lambert tells Defendant, "I just talked to him. He said it's on for tonight." (Preliminary Hearing Transcript, 1/29/18, N.T. 30). Defendant replied, "Oh, yeah, I already talked to him. It's on." (Preliminary Hearing Transcript, 1/29/18, N.T. 30). Detective Shave testified that the night of November 23, 2017 was Thanksgiving night. (Preliminary Hearing Transcript, 1/29/18, N.T. 30). At approximately 8:00 p.m. on November 23, 2017, Douglas Lambert again called Defendant. (Preliminary Hearing Transcript, 1/29/18, N.T. 31). Detective Shave testified that in this phone call, Douglas Lambert can be heard several times stating to Defendant, "I just want you to be careful tonight. I'll be thinking about you and make sure you are dressed for the occasion." (Preliminary Hearing Transcript, 1/29/18, N.T. 31).

On November 23, 2017, after reviewing these prison phone calls, Detective Shave, Detective Murtagh, and Coatesville City Police Corporal Ken Michaels, along with several Pennsylvania State Troopers, established surveillance of Defendant, who was with Lee Fitzgerald Wilson at an establishment called the West End Tavern at the time. (Preliminary Hearing Transcript, 1/29/18, N.T. 32, 55). The police also surveilled William

18

Roussos, who was at his residence in Parkesburg. (Preliminary Hearing Transcript, 1/29/18, N.T. 32). The police set up the surveillance because the phone calls indicated that the trio were involved in something, that the "something" in which they were involved was going to take place that night, and they wanted to follow the men to determine what it was that they were doing. (Preliminary Hearing Transcript, 1/29/18, N.T. 32).

The police observed Defendant and Mr. Wilson leaving the West End Tavern at approximately 11:30 p.m., roughly fifteen (15) to twenty (20) minutes after the police arrived. (Preliminary Hearing Transcript, 1/29/18, N.T. 33, 58). Detective Shave could not recall whether he observed Defendant carrying anything when he left the bar. (Preliminary Hearing Transcript, 1/29/18, N.T. 60-62). Mr. Wilson got into his car; Defendant got into a different car. (Preliminary Hearing Transcript, 1/29/18, N.T. 33). Both proceeded southbound on Strode Avenue to Snake Road to 1241 Youngsburg Road, which is Defendant's residence. (Preliminary Hearing Transcript, 1/29/18, N.T. 33-34). They both entered Defendant's residence. (Preliminary Hearing Transcript, 1/29/18, N.T. 33). Detective Shave did not observe either man to be carrying anything when they entered Defendant's residence. (Preliminary Hearing Transcript, 1/29/18, N.T. 33-34).

Police surveillance of Mr. Roussos showed Mr. Roussos leaving his residence in Parkesburg and traveling to Defendant's residence at 1241 Youngsburg Road. (Preliminary Hearing Transcript, 1/29/18, N.T. 34). Detective Shave was not aware of Mr. Roussos carrying anything with him into the Defendant's residence. (Preliminary Hearing Transcript, 1/29/18, N.T. 34). Detective Shave did not see any of the three (3) men carrying anything when they eventually exited Defendant's residence. (Preliminary Hearing Transcript, 1/29/18, N.T. 34-35). Detective Shave observed the

19

three (3) men enter Mr. Roussos' Jeep and drive southbound on Youngsburg Road. (Preliminary Hearing Transcript, 1/29/18, N.T. 35). The police followed the Jeep. (Preliminary Hearing Transcript, 1/29/18, N.T. 35). They observed the Jeep travel to Buck Run Road, turn northbound on Doe Run Road, turn onto Snake Road, go back to Youngsburg Road, take Youngsburg Road to Strasburg Road, then drive to Park Alley, finally reaching Valley Road. (Preliminary Hearing Transcript, 1/29/18, N.T. 35, 62-63, 71). Detective Shave testified that the Jeep traveled at the speed limit, which was twenty-five (25) miles per hour. (Preliminary Hearing Transcript, 1/29/18, N.T. 71-72).

In the early morning of November 24, 2017, police initiated a traffic stop of the Jeep in the 300th block of Valley Road for a motor vehicle violation. (Preliminary Hearing Transcript, 1/29/18, N.T. 35, 54). The actual stop was made by Corporal Ken Michaels and occurred in the 300th block of Strode Avenue, which is a highway. (Preliminary Hearing Transcript, 1/29/18, N.T. 54-56). The Jeep pulled to the side of the road in front of a parking lot. (Preliminary Hearing Transcript, 1/29/18, N.T. 56). All of these events occurred within the confines of Chester County. (Preliminary Hearing Transcript, 1/29/18, N.T. 35).

When police stopped the vehicle, all of the occupants, including Mr. Roussos, who was driving, Defendant, who was seated in the front passenger's seat, and Mr. Wilson, who was seated in the rear, were taken out of the car and detained. (Preliminary Hearing Transcript, 1/29/18, N.T. 35-36). All three (3) men were dressed in black. (Preliminary Hearing Transcript, 1/29/18, N.T. 38). Detective Shave testified that it was "chilly" that day but there was no snow. (Preliminary Hearing Transcript, 1/29/18,

N.T. 37). Mr. Wilson was searched and found to be in possession of three Oxycodone pills. (Preliminary Hearing Transcript, 1/29/18, N.T. 46, 68).

When Mr. Roussos was removed from the vehicle, a functioning electronic stun gun dropped to the ground. (Preliminary Hearing Transcript, 1/29/18, N.T. 36, 72-73). Mr. Roussos was also found to be in possession of a Leatherman tool. (Preliminary Hearing Transcript, 1/29/18, N.T. 72). Detective Shave testified that Mr. Roussos' identification, bank cards, wallet and a spare set of car keys were found next to one (1) of two (2) black backpacks located in the vehicle in a type of small, nylon bag one might wear around one's waist. (Preliminary Hearing Transcript, 1/2918, N.T. 72, 74).

Inside the vehicle, police found seven (7) or eight (8) flashlights, binoculars, night-vision goggles, latex gloves, wool gloves, ski masks, wool hats, hoodies, and, in the trunk and backseat of the vehicle, the two (2) black book bags mentioned above. (Preliminary Hearing Transcript, 1/29/18, N.T. 36-38, 74). Within one of the book bags police found a separate duffel bag containing burglary tools, wire bolt cutters, wire sheers, machetes, and tinsnips. (Preliminary Hearing Transcript, 1/29/18, N.T. The machetes were sixteen (16") to eighteen (18") inches long. (Preliminary Hearing Transcript, 1/29/18, N.T. 37). Detective Shave testified that Mr. Roussos is employed as an airplane mechanic, but that not all of the tools found inside his vehicle, and Detective Shave specifically referred to the wire bolt cutter, could be deemed to be associated with Mr. Roussos' profession. (Preliminary Hearing Transcript, 1/29/18, N.T. 73). The vehicle was impounded and brought back to the Coatesville Police Station. (Preliminary Hearing Transcript, 1/29/18, N.T. 35).

21

After the car was impounded, Detective Shave and Detective Murtagh interviewed Mr. Roussos. (Preliminary Hearing Transcript, 1/29/18, N.T. 39). This interview was recorded. (Preliminary Hearing Transcript, 1/29/18, N.T. 69). The Detectives gave Mr. Roussos his *Miranda* warnings. (Preliminary Hearing Transcript, 1/29/18, N.T. 45). Mr. Roussos told the Detectives that he was going to provide tools to the Defendant. (Preliminary Hearing Transcript, 1/29/18, N.T. 45, 70). Mr. Roussos also told the Detectives that he knew that they had passed a pizza place and a self-storage place and that he, Mr. Roussos, had heard that the target was the storage locker. (Preliminary Hearing Transcript, 1/29/18, N.T. 45, 47, 70). Detective Shave testified there was a pizza shop, Zanello's Pizzeria, in the vicinity of the route traveled by the men. (Preliminary Hearing Transcript, 1/29/18, N.T. 72). Detective Shave testified that the pizza shop did not serve ice cream on Thanksgiving. (Preliminary Hearing Transcript, 1/29/18, N.T. 72). Detective Shave also testified that there was a storage locker located off of Doe Run Road, which, as noted earlier, was one of the roads the men took on their circuitous drive through Coatesville. (Preliminary Hearing Transcript, 1/29/18, N.T. 45, 62-63, 72).

The offense of Criminal Use of a Communication Facility (Count I) is codified at 18 Pa. C.S.A. § 7512(a), which provides,

> **(a) Offense defined.**--A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under [the Crimes Code] or under the act of April 14, 1972 (P.L. 233, No. 64)[ ] known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

22

. . .

> **(c) Definition.**—As used in this section, the term "communication facility" means a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail.

18 Pa. C.S.A. § 7512(a), -(c).

In the matter *sub judice*, Detective Shave testified that, in his training and experience as a law enforcement officer, Douglas Lambert's recorded prison calls to Mr. Roussos, concerning an unidentified act that Mr. Roussos had to help Douglas Lambert out with that involved "people" who had just been released, as Defendant, Douglas' Lambert's brother was, from prison, which act Douglas Lambert told Mr. Roussos he could not speak of over the prison phone and directed Mr. Roussos to speak to the others about for him; Mr. Roussos statement that he was going to go out for ice cream at midnight, which Detective Shave reasonably inferred was a code for something else; Mr. Roussos' statements, in response to Douglas Lambert's queries as to whether Mr. Roussos and the others had gone out, that "they" had but had encountered unexpected difficulties with horses and an old lady that prevented them from completing the unspecified act and that they would have to go another night, which night Mr. Roussos identified to Douglas Lambert as Thanksgiving night, November 23, 2017, when taken in conjunction with Douglas Lambert's two (2) phone calls to his brother, the Defendant, wherein Defendant confirms that the night on which the act would be committed was November 23, 2017, Thanksgiving night; expresses concern that Douglas Lambert's "man", whom Detective Shave reasonably inferred was a reference to Mr. Roussos, was

23

"blingin" and had possibly done the job alone without the others; and suggested that, if Douglas Lambert gave the "green light" Defendant would do the job himself with "Little Lee and Little Prince", with one accompanying Defendant inside the site and the other acting as a look-out, and wherein Douglas Lambert repeatedly tells Defendant to be careful and dress for the occasion, evidenced a conspiracy to commit multiple felonies, including Burglary and Criminal Trespass. The discovery of numerous implements, including but not limited to machetes, a stun gun, wire bolt cutters, and night-vision goggles in Mr. Roussos vehicle, which "tools" it is not likely Mr. Roussos would need in his job as an airplane mechanic, the fact that the men were apprehended in the middle of the night dressed all in black, Mr. Roussos' statement to the Detectives that the target of their expedition had been a storage shed, and the fact that the three (3) men were observed driving a circuitous route through Coatesville that took them past a storage shed, when viewed in the totality of the circumstances, corroborates Detective Shave's conclusion that the three (3) men, including the Defendant, were conspiring to commit the felonies of Burglary and Criminal Trespass, notwithstanding that no Burglary or Criminal Trespass was, due to the intervention of the police, consummated that evening. Defendant's statements to the effect that he would do the job himself, with one accomplice "going in with him" and another acting as a look-out, establishes that Defendant acted with the intent and knowledge requisite for liability under 18 Pa. C.S.A. § 7512(a), see Commonwealth v. Moss, 852 A.2d 374 (Pa. Super. 2004)(to be guilty of Criminal Use of a Communication Facility, one must act intentionally, knowingly or recklessly with respect to each material element of the offense), and further buttresses the conclusion that the men were planning to commit the felonies of Burglary and

24

Criminal Trespass, as it may be reasonably inferred that a person does not need a "look-out" unless he or she has a nefarious activity in mind.

The defense made much at the Preliminary Hearing of the argument that the confession of Mr. Roussos could not be used against the other co-defendants under *Bruton v. United States*, 88 S.Ct. 1620 (U.S. Mo. 1968). In *Bruton, supra*, the United States Supreme Court held that a defendant "'is deprived of his rights under the Confrontation Clause when his non-testifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant.'" *Commonwealth v. Brown*, 925 A.2d 147, 149 (Pa. 2007), *habeas corpus denied*, *Brown v. Folino*, 2014 WL 1489464 (E.D. Pa. 2014), *reversed on other grounds and remanded*, *Brown v. Superintendent Green S.C.I.*, 834 F.3d 506 (3rd Cir. Pa. 2016), *cert. denied*, *Gilmore v. Brown*, 137 S.Ct. 1581 (U.S. Pa. 2017)(*quoting Richardson v. Marsh*, 107 S.Ct. 1702 (U.S. Mich. 1987)). The *Bruton, supra* Court held that the admission of the non-testifying co-defendant's statement in the joint trial violated the defendant's Sixth Amendment right to confrontation "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining [Bruton's] . . . guilt." *Bruton v. United States*, 88 S.Ct. 1620 (U.S. Mo. 1968). It is apparent that the High Court was concerned with the effect of a non-testifying co-defendant's statement on the mind of a jury.

In *Commonwealth v. McCrae*, the Pennsylvania Supreme Court considered whether an appellant's confrontation rights were violated when the redacted statement of a witness who testified at the co-defendant's preliminary hearing was introduced at trial.

25

*Brown, supra* (*citing Commonwealth v. McCrae*, 832 A.2d 1026 (Pa. 2003), *cert. denied, McCrae v. Pennsylvania*, 125 S.Ct. 31 (U.S. Pa. 2004)). The Pennsylvania Supreme Court held that *Bruton, supra* applies

> only in the context that gave rise to the decision, *i.e.*, the introduction of a powerfully incriminating statement made by a non-testifying co-defendant at a joint trial. *Bruton* is inapplicable to statements made by an individual other than a non-testifying co-defendant at a joint trial of co-defendants.

*Brown*, 925 A.2d at 159 (*quoting Commonwealth v. McCrae*, 832 A.2d 1026, 1038 (Pa. 2003), *cert. denied, McCrae v. Pennsylvania*, 125 S.Ct. 31 (U.S. Pa. 2004)(internal citations omitted)). An accused does not have a State or Federal constitutional right to confront the witnesses against him at his Preliminary Hearing. *Commonwealth v. Ricker*, 120 A.3d 349 (Pa. Super. 2015), *petition for allowance of appeal granted*, 135 A.3d 175 (Pa. 2016), *appeal dismissed as improvidently granted*, 170 A.3d 494 (Pa. 2017). Indeed, unlike the trial in *Bruton, supra*, there is no jury at a Preliminary Hearing. *Bruton, supra* applies only to jury trials. *Johnson v. Tennis*, 549 F.3d 296 (3rd Cir. Pa. 2008), *cert. denied*, 129 S.Ct. 2774 (U.S. Pa. 2009). It does not even apply to bench trials. *Id.* "[T]he right to confrontation is a *trial* right." *Pennsylvania v. Ritchie*, 107 S.Ct. 989 (U.S. Pa. 1987)(emphasis in original). *See also In re N.C.*, 105 A.3d 1199, 1215 (Pa. 2014)(*quoting Commonwealth v. Williams*, 84 A.3d 680, 684 (Pa. 2014))("'[T]he right to confrontation is basically a trial right[.]'"). From this precedent, it may be concluded that the introduction of a non-testifying co-defendant's statement at a Preliminary Hearing, which is not a trial and does not involve a jury, does not violate a defendant's right to confrontation under *Bruton v. United States*, 88 S.Ct. 1620 (U.S. Mo. 1968). Consequently, it was not error for the Magistrate to allow the Commonwealth to admit the

26

statement of Mr. Roussos at the co-defendants' joint Preliminary Hearing, nor was it improper for this Court to consider it in determining at Defendant's pre-trial habeas hearing whether the Commonwealth had established a *prima facie* case.

Thus, viewed in the light most favorable to the Commonwealth and giving the Commonwealth the benefit of every reasonable inference to be drawn in its favor, and noting that weight and credibility determinations are not part of the *habeas* decision-making process, *see Commonwealth v. Landis*, 48 A.3d 432 (Pa. Super. 2012)(the weight and credibility of the evidence presented is not a factor at the *habeas* stage), and that, while the evidence here was not comprised solely of hearsay testimony, hearsay testimony has long been admissible at a preliminary hearing, *see* Pa. R.Crim.P. 542(E); *Commonwealth v. Tyler*, 587 A.2d 326 (Pa. Super. 1991), *appeal quashed*, 617 A.2d 1263 (Pa. 1992), and has been held to be sufficient alone to establish a *prima facie* case, *Commonwealth v. Ricker*, 120 A.3d 349 (Pa. Super. 2015), *petition for allowance of appeal granted*, 135 A.3d 175 (Pa. 2016), *appeal dismissed as improvidently granted*, 170 A.3d 494 (Pa. 2017), the evidence of record at the Preliminary Hearing was sufficient to establish *prima facie* that Defendant committed the offense of Criminal Use of a Communication Facility, as Defendant intentionally and knowingly twice utilized a phone to speak with Douglas Lambert to facilitate the plan to commit the crimes of Burglary and Criminal Trespass, which are both felonies under the Crimes Code. Defendant's habeas challenge to Count I, charging Criminal Use of a Communication Facility, should, respectfully, be denied and dismissed.

The next count presented to the jury for adjudication, Count II, accused Defendant of committing the crime of Possessing Instruments of Crime under 18 Pa.

27

C.S.A. § 907(a). Section 907(a) of the Crimes Code, 18 Pa. C.S.A. § 101 *et seq.*, provides that "[a] person commits a misdemeanor of the first degree if he possesses any instrument of crime with the intent to employ it criminally." 18 Pa. C.S.A. § 907(a). Under subsection (d), "instrument of crime" is defined as "(1) [a]nything specially made or specially adapted for criminal use[;] (2) [a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for the lawful uses it may have." 18 Pa. C.S.A. § 907(d).

None of the items found in Mr. Roussos' car were specially made or specially adapted for criminal use. However, it is apparent, for all of the reasons aforesaid, that they were used for criminal purposes and possessed by Defendant under circumstances not manifestly appropriate for the lawful uses that they have. Further, it is of no moment that the items found in the vehicle were not found on Defendant's physical person. As Defendant was present in the vehicle driven by Mr. Roussos on the way, it may be reasonably inferred, to consummate the planned Burglary and Criminal Trespass as evidenced by the phone conversations between Douglas Lambert, Defendant and Mr. Roussos and Mr. Roussos' later confession to the police, Defendant may be held liable for the possession of all of the items found in Mr. Roussos' car on the theory of joint and constructive possession. *See Commonwealth v. Gilchrist*, 386 A.2d 603 (Pa. Super. 1978)(to prove joint and constructive possession of contraband, the Commonwealth must establish that the Defendant had the power to control and the intent to exercise joint control; such elements can be inferred from the totality of the circumstances, and even mere presence is a factor). Further, once there is evidence of the presence of a conspiracy, the conspirators are liable for the acts of their co-conspirators committed in

furtherance of the conspiracy. *Commonwealth v. Hernandez*, 2018 WL 285829 (Pa. Super. 2018), *appeal denied*, 186 A.3d 366 (Pa. 2018). For all of these reasons, Defendant may be deemed, *prima facie*, to have possessed an instrument of crime within the meaning of 18 Pa. C.S.A. § 907(a) and –(d).

The second element of the offense of Possessing Instruments of Crime is that the Defendant possessed the instrument with the intent to employ it criminally. 18 Pa. C.S.A. § 907(a). The evidence of the phone calls which passed among all of the co-conspirators, especially those between Douglas Lambert and the Defendant, wherein the Defendant tells Douglas Lambert that if Douglas Lambert gives the go-ahead, Defendant will do the job himself with the assistance of "Little Lee" and "Little Prince", one of whom shall go inside the target with Defendant and the other of whom will act as a "look-out", the circumstances of their apprehension, and the subsequent confession of William Roussos are all sufficient to establish *prima facie* that Defendant possessed instruments of crime with the intent to employ them criminally. Defendant's *habeas* challenge to the Commonwealth's *prima facie* case on the charge of Possessing Instruments of Crime should, respectfully, be denied and dismissed.

The next charge presented to the jury for adjudication was Criminal Conspiracy to Commit Burglary (Count III), 18 Pa. C.S.A. §§ 903(a)(1), -(2) and 3502(a)(4). Sections 903(a)(1) and –(a)(2) of the Crimes Code, 18 Pa. C.S.A. § 101 *et seq.*, provide that

> [a] person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

29

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa. C.S.A. § 903(a)(1), -(2). Subsection (b) of the Conspiracy statute provides,

> **(b) Scope of conspiratorial relationship.**—If a person guilty of conspiracy, as defined by subsection (a) of this section, knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime, he is guilty of conspiring with such other person or persons, to commit such crime whether or not he knows their identity.

18 Pa. C.S.A. § 903(b). Finally, insofar as is pertinent to our analysis, subsection (e) of the Conspiracy statute provides,

> **(e) Overt act.**—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa. C.S.A. § 903(e). The overt act in furtherance of a conspiracy need not accomplish the crime; it need only be in furtherance thereof, and in fact, no crime at all need be accomplished for the conspiracy to be committed. *Commonwealth v. Weimer*, 977 A.2d 1103 (Pa. 2009).

As stated in Count III, the objective of the Conspiracy was the crime of Burglary. The crime of Burglary as charged in this case is codified at 18 Pa. C.S.A. § 3502(a)(4), which provides

> A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

30

. . .

> (4) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present.

18 Pa. C.S.A. § 3502(a)(4). The elements of the statutory offense of Burglary are (1) the attempt to commit a felony and (2) a successful and overt act directed toward the commission of the felony by willful and malicious entry into a building. *Commonwealth v. Garrett*, 323 A.2d 314 (Pa. Super. 1974).

The felony attempted in the matter *sub judice* was Criminal Trespass, a felony of the second degree (F-2). Criminal Trespass, as charged in Count IV, which again alleges Criminal Conspiracy to Commit Criminal Trespass, is codified at 18 Pa. C.S.A. § 3503(a)(1)(ii) of the Crimes Code, 18 Pa. C.S.A. § 101 *et seq.*, which provides that "[a] person commits an offense if, knowing that he is not licensed or privileged to do so, he . . . (ii) breaks into any building or occupied structure or separately secured or occupied portion thereof." 18 Pa. C.S.A. § 3503(a)(1)(ii). "Breaks into" means "to gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access." 18 Pa. C.S.A. § 3503(a)(3).

The evidence is sufficient to support the conclusion, *prima facie*, that the Defendant was engaged in a conspiracy to commit the crime of Burglary. We have already discussed the sufficiency of the evidence *prima facie* to establish a conspiracy among the co-defendants, Defendant included. The phone calls between Douglas Lambert and William Roussos and the phone calls between Douglas Lambert and the Defendant, including the one in which Defendant asked Douglas Lambert for permission

31

to do the job himself with two others, one of whom would accompany Defendant into the structure and the other of which would act as a look-out, and the phone call in which Defendant advised Douglas Lambert that he had already spoken with Mr. Roussos[2] and knew that the date of the job was November 23, 2017, as well as the co-perpetrators' joint presence in Mr. Roussos' car on the appointed night of November 23, 2017 and their act of driving in a circle which encompassed a storage shed that was located off of one of the roads they traveled in Coatesville while possessing numerous implements, including a stun gun, night-vision goggles, and machetes, that could be utilized to break into a building, and in light of Mr. Roussos' admission to police that the target of the conspiracy was a in fact a storage shed, is sufficient, when viewed in the light most favorable to the Commonwealth, to establish that Defendant, with the intent of promoting or facilitating a burglary, agreed with another person or persons that they or one or more of them would engage in conduct which constitutes the crime of Burglary or an attempt or solicitation to commit that crime and that Defendant, again with the intent of promoting or facilitating a burglary, agreed to aid another person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime, so as to satisfy the Commonwealth's *habeas* burden under 18 Pa. C.S.A. § 903(a)(1), -(2).

---

[2] This phone call also indicates that Defendant knew that his brother, Douglas Lambert, was conspiring with Mr. Roussos to commit the crime of Burglary and other offenses, so as to expand the scope of the conspiratorial relationship to all of his co-conspirators, whether Defendant knew them or not, as permitted by 18 Pa. C.S.A. § 903(b), although the facts that Douglas Lambert made phone calls to Mr. Roussos and the Defendant, that Defendant told Douglas Lambert that he had spoken with Mr. Roussos, that Defendant told Douglas Lambert that he wanted to do the job himself with the assistance of "Little Lee", who may reasonably be inferred to be co-defendant Wilson, the fact that he was observed on the night of the crimes to be in the company of Mr. Wilson at a tavern and that Mr. Wilson traveled to Defendant's house, and that all three (3) men, Douglas Lambert excluded as he was incarcerated, then entered Mr. Roussos' Jeep for the purpose of committing the Burglary and other offenses, we may discern that all of the co-conspirators knew each other and the role of each in the conspiracy.

32

It is evident from the record that the objective of the Conspiracy was, among other offenses, Burglary. The evidence establishes *prima facie* that the Defendant, with the intent to commit a crime therein, planned with others to enter a storage facility in the middle of the night of November 23, 2017 to commit the felony of Criminal Trespass, as well as the misdemeanor of Theft by Unlawful Taking under 18 Pa. C.S.A. § 3921(a). A storage shed is generally a structure that is not adapted for overnight accommodations and, in this case, the Commonwealth did not charge or present any evidence that a person was present therein. For conspiracy purposes, as we mentioned above, no actual crime must be accomplished for the conspiracy to be complete. *Weimar, supra.*

Viewing the evidence in the light most favorable to the Commonwealth and giving the Commonwealth the benefit of every reasonable inference that may be drawn in its favor, and recognizing that we need not have a completed predicate crime in order to establish a conspiracy, the evidence is sufficient *prima facie* to permit the inference that in driving their circuitous route through Coatesville, circling the area where a storage shed could be found located off of one of the roads on which they traveled, the Defendant and his confederates were, as required by the first element attendant to a conviction for Burglary, attempting to commit the crime of Criminal Trespass, a felony of the second degree (F-2). The facts that they were traveling in the middle of the night, on the very day appointed for the criminal enterprise as discovered by the police during their investigative review of the men's recorded prison phone calls, all dressed in black, with tools such as a stun gun, night-vision goggles, and machetes, indicate, *prima facie*, that the trio, including the Defendant, intended to break into the shed, a building, by gaining

33

entry into the shed by force and that they knew they were not licensed or privileged to do so.

Because the evidence is sufficient to establish that the Defendant and his cohorts intended to commit the felony of Criminal Trespass and took an overt act towards its commission by driving around the area in the middle of the night dressed in black with implements of crime in their possession, the first element of Burglary, attempted commission of a felony, is, *prima facie*, satisfied. The second element, the commission of a successful and overt act directed toward the commission of the felony by willful and malicious entry into a building, was attempted, as the road trip signified, but arguably not successful, as the statute requires. Again, however, the crime charged is Criminal Conspiracy to Commit Burglary, for which the consummation of the criminal objective is not required. *Weimar, supra*. Still, an overt act in furtherance of the conspiracy is required. 18 Pa. C.S.A. § 903(e). With respect to this element of Conspiracy, it is evident that an overt act was accomplished in furtherance thereof, demonstrated by the perpetrators' drive around the area of the target of the Burglary in Coatesville in the middle of the night, dressed in black, with multiple criminal instruments in the car.

It is of no moment that the conspirators' efforts to commit the crime of Burglary were thwarted by the police. This is not renunciation. In order to be effective as a renunciation, the withdrawal from criminal activity must be voluntary. 18 Pa. C.S.A. § 903(f). Police apprehension is, we may assume for purposes of the *habeas* hearing, not voluntary on the part of the conspirators. For all of these reasons, we conclude that the Commonwealth met its burden of establishing, *prima facie*, that the Defendant was part of a criminal conspiracy with the criminal objective being Burglary. Accordingly, we would

34

respectfully submit that Defendant's *habeas* challenge to Count III should be denied and dismissed.

In Count IV, Defendant was convicted of Criminal Conspiracy to Commit Criminal Trespass, under 18 Pa. C.S.A. §§ 903(a)(1), -(2) and 3503(a)(1)(ii). We have already established how the evidence was sufficient, *prima facie*, to enable the Court to conclude that the Commonwealth had met its burden to establish a Criminal Conspiracy between Defendant and his co-defendants.

We have also already discussed the elements of Criminal Trespass as codified at 18 Pa. C.S.A. § 3503(a)(1)(ii), which states that "[a] person commits an offense if, knowing that he is not licensed or privileged to do so, he . . . (ii) breaks into any building or occupied structure or separately secured or occupied portion thereof." 18 Pa. C.S.A. § 3503(a)(1)(ii). Again, as noted above, "[b]reaks into" means "to gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access." 18 Pa. C.S.A. § 3503(a)(3).

We explained that by driving their circuitous route through Coatesville, circling the area where the storage shed target, as Mr. Roussos confirmed for police, could be found located off of one of the roads on which they traveled, the Defendant and his confederates may be deemed *prima facie* to have been attempting to commit the crime of Criminal Trespass, a felony of the second degree (F-2). The facts that they were traveling in the middle of the night, all dressed in black, with tools such as a stun gun, night-vision goggles, and machetes indicate, *prima facie*, that the trio, including the Defendant, intended to break into the shed, a building, by gaining entry into the shed by force and that they knew they were not licensed or privileged to do so. Again, the

35

completion of the crime of Criminal Trespass is not required, as only Criminal Conspiracy to Commit Criminal Trespass was presented to the jury for adjudication. However, an overt act in furtherance of the conspiracy was undertaken as evidenced by the men's travel in the vicinity of the target of the conspiracy in a vehicle stockpiled with instruments of crime.

For all of the foregoing reasons, we respectfully submit that the Commonwealth presented sufficient evidence at the Preliminary Hearing to establish Defendant's complicity in the crime of Criminal Conspiracy to Commit Criminal Trespass and that his *habeas* challenge to that charge should, respectfully, be denied and dismissed.

The next charge presented to the jury for adjudication was Count V, Conspiracy to Commit Possessing Instruments of Crime. We have already discussed how the evidence was sufficient, *prima facie*, to establish that Defendant was part of a criminal conspiracy. We have also already discussed how the evidence at the Preliminary Hearing was sufficient to establish *prima facie* that Defendant committed the offense of Possessing Instruments of Crime. The inference that the objectives of the criminal conspiracy included a conspiracy to commit the offense of Possessing Instruments of Crime may be drawn by the fact that all three (3) non-incarcerated co-conspirators voluntarily entered and traveled in a car laden with instruments of crime for the purpose of committing the felonies of Burglary and Criminal Trespass, among other crimes. The placing of the criminal implements in the vehicle, whether done by Defendant or one of the others, as we have already established that a conspirator is liable for the acts of his confederates taken in furtherance of the conspiracy, may be

36

considered *prima facie* as an overt act in the pursuit of the conspiracy as required for liability under 18 Pa. C.S.A. § 903(e). The act of entering a vehicle laden with implements of crime and driving around Coatesville in the vicinity of the target of their conspiracy to commit Burglary is also an overt act undertaken in furtherance of the conspiracy to possess instruments of crime, as it is, in conjunction with the phone calls among the co-conspirators and Mr. Roussos' confession, that which gives the fact of Defendant's possession its criminal nature. For all of these reasons, we respectfully submit that Defendant's *habeas* challenge to the offense of Criminal Conspiracy to Commit Possessing Instruments of Crime has no merit and should, respectfully, be denied and dismissed.

Finally, in Count VI, Defendant was charged with Criminal Conspiracy to Commit Theft by Unlawful Taking pursuant to 18 Pa. C.S.A. §§ 903(a)(1), -(2) and 3921(a). We have already explained how the evidence is sufficient, *prima facie*, to establish that Defendant was a principal in a criminal conspiracy. The reasonable inference from the facts of this matter, including the phone conversations among the conspirators, the circumstances of the apprehension of the conspirators and the items found inside their vehicle, and the confession of Mr. Roussos, which the Commonwealth is entitled to have drawn in its favor, is that Defendant's participation in this conspiracy was undertaken in order to steal whatever could be found inside the target storage shed. Theft by Unlawful Taking is codified at 18 Pa. C.S.A. § 3921(a), which provides, "[a] person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with the intent to deprive him thereof." 18 Pa. C.S.A. § 3921(a). Given the phone calls between Douglas Lambert and William Roussos, the phone calls

37

between Douglas Lambert and the Defendant, the act of driving a vehicle containing a multitude of criminal instruments in the vicinity of the admitted target of a Burglary, it is reasonable to infer that the coconspirators intended to take from the storage shed the movable property of another, that they did so knowing that it was unlawful, and that they acted with the intent to deprive the owner of the property that was to be taken. Again, as only Criminal Conspiracy to Commit Theft by Unlawful Taking was presented to the jury for adjudication, a completed theft is not required. However, an overt act is, and that overt act is evidenced by the confederates' driving their vehicle around Coatesville in the vicinity of the admitted target of a Burglary in the middle of the night, dressed in black, while in possession of numerous instruments of crime, including a stun gun, night-vision goggles, wire bolt cutters, and machetes. The only reasonable inference from this conduct is that the conspirators intended to utilize these implements to break into the storage facility and remove movable items belonging to another person or persons with the intent to permanently deprive the victims thereof. For all of these reasons, we respectfully submit that the evidence of record at the Preliminary Hearing was sufficient *prima facie* to permit the inference that the scope of the conspiratorial agreement between all of the co-defendants, Defendant included, encompassed the intent to commit Theft by Unlawful Taking, and that therefore the Commonwealth met its burden with respect to this charge. Consequently, we would respectfully recommend that Defendant's challenge to this Court's *habeas* decision as it relates to Count VI, Criminal Conspiracy to Commit Theft by Unlawful Taking, is without merit and should, respectfully, be denied and dismissed.

Because all of the offenses which were presented to the jury for consideration in this case were supported by sufficient *prima facie* evidence at the Preliminary Hearing, we respectfully submit that there is no merit to Defendant's issue on appeal regarding our resolution of his *habeas* motion. We further submit that our February 28, 2019 denial of Defendant's Motion to Dismiss/Motion for Writ of Habeas Corpus with respect to the charges for which Defendant was convicted is supported by the evidence and free of legal error. Accordingly, it is our recommendation that the issue Defendant has raised concerning his pre-trial *habeas* motion should, respectfully, be denied and dismissed.

## B. Suppression

On May 4, 2018 Defendant filed a counseled Motion to Suppress. At some point, he submitted a Memorandum of Law in support thereof, although it does not appear to have been filed. At the hearing on said Motion held October 29, 2018, Defendant narrowed the issues he intended to prosecute in his Motion to the validity of the stop and the legality of his arrest only,[3] as he conceded that he did not have standing to challenge the search of Mr. Roussos' vehicle, because that search was supported by the consent of Mr. Roussos, who was the registered owner.[4] (Suppression Hearing

---

[3] We note that "'the 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search or interrogation occurred.'" *Commonwealth v. Santiago*, 160 A.3d 814, 823 (Pa. Super. 2017), *reargument denied* (June 16, 2017), *aff'd*, 209 A.3d 912 (Pa. 2019)(*quoting I.N.S. v. Lopez-Mendoza et al.*, 104 S.Ct. 3479 (U.S. Cal./Wash. 1984)). *See also Commonwealth v. Dobbins*, 934 A.2d 1170 (Pa. 2007)(the proper remedy for an illegal arrest is suppression, not discharge); *Commonwealth v. Finley*, 860 A.2d 132 (Pa. Super. 2004), *reargument denied* (November 10, 2004)(same proposition).

[4] Defendant sought suppression both of the contraband found in Mr. Roussos' car and the statements he made in the telephone calls to his brother Douglas Lambert that were recorded by the prison, evidence which, we observe, was obtained prior to the stop of Mr. Roussos' car and the seizure of the Defendant's person. Because these

Transcript, 10/29/18, N.T. 5-13). On the Commonwealth's oral motion to dismiss, we agreed that Defendant lacked standing to pursue his suppression motion as it related to the search of Mr. Roussos' vehicle and that, as a result of his lack of standing on that issue, the remainder of his Motion was moot. We granted the Commonwealth's oral motion to dismiss.

However, subsequently we entered our February 28, 2019 Order addressing the merits of Defendant's Motion to Suppress, notwithstanding that we had dismissed his Motion at the outset of the suppression hearing. In our Order of February 28, 2019, we denied Defendant's Motion on the basis that probable cause and/or reasonable suspicion existed to support the stop of the vehicle in which Defendant was riding. This part of our February 28, 2019 Order is a nullity because, as we indicated above, we had already dismissed Defendant's Motion to Suppress at the beginning of the suppression hearing, prior to the testimony of the first witness, thereby precluding defense counsel from putting on any evidence with respect thereto or cross-examining the Commonwealth's witnesses.

Defendant, however, in his Concise Statement of Errors Complained of on Appeal, did not assert a challenge to our dismissal of Defendant's Motion for lack of standing and mootness. Instead, he argues that we erred by denying Defendant's Motion on the merits because "the vehicle stop was illegal." (Deft.'s Concise Statement, 1/9/20, at 1, para. 1). Because Defendant did not raise the issue of the validity of our dismissal of Defendant's Motion at the beginning of the suppression hearing on October 29, 2018,

---

statements occurred prior to the stop and seizure which is at issue, they cannot be considered "fruit of the poisonous tree" so as to authorize their suppression.

which effectively served to preclude any operative ruling on the merits of the underlying defense Motion, we would respectfully submit that Defendant has waived this issue for purposes of appeal. *See* Pa. R.A.P. 1925(b)(4)(vii)("issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

However, should this Honorable reviewing Court conclude that Defendant has not waived the issue of the validity of our pre-hearing dismissal of his Motion, which would legitimately be the only issue potentially available to him on this record, we respectfully submit that any challenge to our October 29, 2018 dismissal of Defendant's Motion to Suppress is without merit and should, respectfully, be denied and dismissed for the reasons outlined below.

As this Court recently stated,

"[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, [the appellate court] may consider only the evidence of the Commonwealth and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review."

*Commonwealth v. Petersen*, 2018 WL 4177606 (Pa. Super. 2018)(*quoting Commonwealth v. Mason*, 130 A.3d 148, 151-52 (Pa. Super. 2015), *appeal denied*, 138

A.3d 3 (Pa. 2016), *dismissal of post-conviction relief vac'd on other grounds*, 185 A.3d 1119 (Pa. Super. 2018)(for text, *see* 2018 WL 847758 (Pa. Super. 2018)), *dismissal of post-conviction relief aff'd*, 201 A.3d 860 (Pa. Super. 2018)(for text, *see* 2018 WL 6038581 (Pa. Super. 2018), *overruled on other grounds by Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019), *cert. denied, Pennsylvania v. Hicks*, 140 S.Ct. 645 (U.S. Pa. 2019) (quotations and citations omitted)). A question of standing is a question of law. *Commonwealth v. Shabezz*, 166 A.3d 278 (Pa. 2017).

There are two (2) reasons why Defendant's attempt to challenge the search of Mr. Roussos' vehicle necessarily fails. First, Defendant lacked standing to pursue his challenge. Second, Defendant's claim has no substantive merit.

With respect to the conclusion that Defendant lacked standing to contest the search of Mr. Roussos' vehicle, we find that Defendant's concession that he did not have standing to contest the search of Mr. Roussos' vehicle is itself supported by the law for two (2) reasons. First, Defendant lacked standing to contest the search of Mr. Roussos's vehicle because the consent of the true owner in possession to a search of a vehicle supersedes the right of all others to exclude the police from conducting a search. *Commonwealth v. Whitney*, 2014 WL 10575439 (Pa. Super. 2014), *appeal denied*, 113 A.3d 280 (Pa. 2015). Even if the stop were invalid, Mr. Roussos' consent to search was an independent basis upon which the police could lawfully premise the search. *Commonwealth v. Evans*, 153 A.3d 323 (Pa. Super. 2016)(consent is a valid exception to the warrant requirement). With respect to the validity of the consent, the law does not permit a criminal defendant to vicariously challenge the Fourth Amendment rights of a third party. *Commonwealth v. Ferretti*, 577 A.2d 1375 (Pa. Super. 1990), *appeal denied*,

589 A.2d 688 (Pa. 1991). Consequently, Defendant's Motion, insofar as it sought to contest the validity of the stop, was moot due to Mr. Roussos' provision of an alternate, independent basis justifying the search of his own vehicle.

The second reason why Defendant lacked standing to contest the search of Mr. Roussos' vehicle is because Defendant lacked a reasonable expectation of privacy in Mr. Roussos' vehicle. We note that Defendant was tried for two (2) possessory offenses, Possessing Instruments of Crime and Criminal Conspiracy to Commit Possessing Instruments of Crime. Although automatic standing to pursue a suppression motion is conferred by the lodging of possessory charges against a defendant, *see Commonwealth v. Bussey*, 2014 WL 10575170 (Pa. Super. 2014), *appeal denied*, 117 A.3d 295 (Pa. 2015)("[a] defendant has automatic standing if he is . . . charged with a possessory offense relative to the seized contraband[.]"), it is still his burden to establish that he had a reasonable expectation of privacy in the place searched. *Id.*

"It is settled that a 'legitimate expectation of privacy is present when there is both a subjective privacy expectation coupled with objective reasonableness.'" *Commonwealth v. Bussey*, 2014 WL 10575170 * 5 (Pa. Super. 2014), *appeal denied*, 117 A.3d 295 (Pa. 2015)(*quoting Commonwealth v. Hawkins*, 718 A.2d 265 (Pa. 1998)). "In determining whether a person's expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered and the determination will ultimately rest upon a balancing of the societal interests involved." *Commonwealth v. Viall*, 890 A.2d 419 (Pa. Super. 2005). "[L]egitimate presence in a car is insufficient to establish a subjective expectation of privacy in places where others could have access to the item at the same time." *Bussey, supra* at * 8.

43

Defendant's legitimate presence in Mr. Roussos' vehicle does not alone evidence his subjective expectation of privacy. Yet even if we were to assume, *arguendo*, that Defendant possessed a subjective expectation of privacy in Mr. Roussos' vehicle, the law instructs that when contraband is "not shielded from the view of other occupants and '[w]here joint access or control exists, there can be no reasonable or legitimate expectation of privacy.'" *Commonwealth v. Hopkins*, 2018 WL 4076276 * 5 (Pa. Super. 2018)(*quoting Viall*, 890 A.2d at 423).

As the contraband found in Mr. Roussos' car pursuant to a consensual search authorized by Mr. Roussos, the vehicle's owner, was not shielded from the view of the other occupants of the vehicle but was jointly accessible by all of the vehicle's occupants. Consequently, any subjective expectation of privacy Defendant might arguably have had in Mr. Roussos' vehicle was not objectively reasonable. *See Commonwealth v. Bussey*, 2014 WL 10575170 * 8 (Pa. Super. 2014), *appeal denied*, 117 A.3d 295 (Pa. 2015)(*quoting Commonwealth v. Millner*, 888 A.2d 680, 692 (Pa. 2005))("'A defendant's attempt to secrete evidence of a crime is not synonymous with a legally cognizable expectation of privacy. A mere hope for secrecy is not a legally protected expectation.'"). Thus, the conclusion that Defendant lacked a reasonable expectation of privacy in Mr. Roussos' vehicle is supported by the facts and the law. Accordingly, it was appropriate to conclude that Defendant lacked standing to pursue his challenge to the search of Mr. Roussos' vehicle.

The second reason why his challenge to the search of Mr. Roussos' vehicle must fail is because, as we stated, it has no substantive merit. Under *Commonwealth v. Gary*, all that is needed to support a warrantless search of an automobile is probable

cause; no exigency beyond the inherent mobility of a motor vehicle is required. *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014). "'Probable cause exists where the facts and circumstances within the knowledge of the officer are based upon reasonably trustworthy information and are sufficient to warrant a [person] of reasonable caution in the belief that the suspect 'has committed or is committing a crime.'"" *Commonwealth v. Bussey*, 2014 WL 10575170 (Pa. Super. 2014), *appeal denied*, 117 A.3d 295 (Pa. 2015). With respect to a search there must be probable cause to believe that contraband or evidence of a crime will be found in a particular place. *Commonwealth v. Manuel*, 194 A.3d 1076 (Pa. Super. 2018). The record of the Preliminary Hearing, as discussed above, is more than sufficient to establish that the police had probable cause to believe that contraband or evidence of a crime would be found in Mr. Roussos' vehicle and to search Mr. Roussos' vehicle for that evidence. We incorporate herein by reference and refer this Honorable reader to that discussion for purposes of resolving the merits of Defendant's claim that his challenge to the search of Mr. Roussos' vehicle had substantive merit.

Because of Mr. Roussos' consent to search, Defendant's lack of a reasonable expectation of privacy in the vehicle driven and owned by Mr. Roussos, and the lack of substantive merit to the underlying claim, any objection he may have had with respect to the validity of the stop, had he been permitted to litigate it, would have been moot.

Finally, with respect to Defendant's challenge to the legality of his own arrest, we acknowledge that Defendant was present on the premises at the time of the seizure of his person. Unquestionably, he has a possessory interest in his own body and his expectation of privacy with respect thereto is reasonable and legitimate. However, as

45

with Defendant's attempt to challenge the legality of the stop of Mr. Roussos' vehicle, his challenge to the validity of his arrest, had it been permitted to proceed, would have been denied as moot for the reasons set forth below.

First, nothing was seized from the Defendant's person. There are no fruits of the poisonous tree to suppress with respect to his seizure. The evidence in this case was obtained from the consensual search of a vehicle owned by one of his co-defendants, which is an independent basis upon which to premise a search, *Evans*, *supra* and as to which Defendant admitted he had no standing to contest. Consequently, there is no authority to suppress the evidence recovered from the consensual search of Mr. Roussos' vehicle and no evidence obtained otherwise to suppress.

In addition to not being the product of his allegedly illegal seizure, the evidence utilized against the Defendant would have been inevitably discovered even if Defendant had not been seized or present at the time of the stop, as the evidence was derived from the search of a vehicle conducted pursuant to the consent of the third-party owner. *See Commonwealth v. Gonzalez*, 979 A.2d 879 (Pa. Super. 2009)(the inevitable discovery doctrine provides that evidence which would have been discovered is sufficiently purged of the original illegality to allow its admission at trial; implied in this doctrine is the fact that the evidence would have been discovered despite the initial illegality).

Finally, even had we determined that Defendant possessed standing to pursue his challenge to the legality of his arrest, he would not have been entitled to relief on the substantive merits of his suppression motion.

To be constitutionally valid, a warrantless arrest must be supported by

probable cause. *Commonwealth v. Evans*, 661 A.2d 881 (Pa. Super. 1995), *aff'd*, 685 A.2d 535 (Pa. 1996). *See also* Pa. R.Crim.P. 502(2)(b)("Criminal proceedings in court cases shall be instituted . . . upon probable cause when the offense is a felony or murder). As we indicated above, "'[p]robable cause exists where the facts and circumstances within the knowledge of the officer are based upon reasonably trustworthy information and are sufficient to warrant a [person] of reasonable caution in the belief that the suspect 'has committed or is committing a crime.'"" *Commonwealth v. Bussey*, 2014 WL 10575170 * 10 (Pa. Super. 2014), *appeal denied*, 117 A.3d 295 (Pa. 2015)(*quoting Commonwealth v. Delvalle*, 74 A.3d 1081, 1085 (Pa. Super. 2013)). The facts as established at the Preliminary Hearing, discussed above, are sufficient to demonstrate that the police had probable cause to stop Mr. Roussos' vehicle for each of the charges for which Defendant sustained convictions after trial.

Not only does the record of the Preliminary Hearing demonstrate in its own right that sufficient probable cause existed, the Preliminary Hearing transcript, as we discussed earlier, amply supports the existence of a *prima facie* case for all of the charges upon which Defendant was convicted. *Prima facie* is a higher standard to meet than probable cause. *Prima facie* requires a conclusion that it is more likely than not that a crime was committed and the defendant was the one who committed it. *Commonwealth v. Wojdak*, 466 A.2d 991 (Pa. 1983). Probable cause does not involve certainties, *Commonwealth v. Petersen*, 2018 WL 4177606 (Pa. Super. 2018); criminality need only be one reasonable inference and it need not even be the most likely one. *Commonwealth v. Salter*, 121 A.3d 987 (Pa. Super. 2015), *reargument denied* (October 14, 2015). For probable cause, it is only the probability and not a *prima facie* showing of

criminal activity that is required. *Commonwealth v. Petersen*, 2018 WL 4177606 (Pa. Super. 2018).

Because of our determination that the Commonwealth met its burden of demonstrating a *prima facie* case as to each of the charges that led to Defendant's convictions, it necessarily follows that the Commonwealth demonstrated sufficient probable cause to justify Defendant's warrantless arrest. The record of the Preliminary Hearing amply demonstrates, as we showed above, that at the time police stopped Mr. Roussos' vehicle, they had probable cause to do so to support all of the charges for which Defendant sustained convictions after trial.

For all of these reasons, we respectfully submit that our decision to dismiss Defendant's Motion to Suppress was supported by the facts of record and the relevant law. Consequently, we would respectfully submit that Defendant's challenge to this Court's dismissal of his Motion to Dismiss has no merit and should, respectfully, be denied and dismissed.

In conclusion, as we have demonstrated that there is no merit to either of the issues Defendant has raised on appeal, it is our recommendation, respectfully tendered, that Defendant's appeal be denied and dismissed and the Judgment of Sentence imposed against him on November 19, 2019 be affirmed.

BY THE COURT:

2-26-2020
_____
Date

_____
Allison Bell Royer,                    J.